896 F.Supp. 42 (1995)
Pamela W. GLEICHMAN, et al., Plaintiffs,
v.
UNITED STATES DEPARTMENT OF AGRICULTURE, et al., Defendants.
Civ. No. 95-219-P-H.
United States District Court, D. Maine.
August 8, 1995.
*43 Michael T. Healey, Carl E. Kandutsch, Verrill & Dana, Portland, ME, for plaintiffs.
Gail Fisk Malone, Assistant United States Attorney, Bangor, ME, Marcia E. Asquith, Office of General Counsel, U.S. Department of Agriculture, Washington, DC, David R. Collins, Assistant United States Attorney, Portland, ME, Nicholas Mamone, Office of General Counsel, U.S. Department of Agriculture, Harrisburg, PA, for defendants.
ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER
HORNBY, District Judge.

A. MOTION TO DISMISS
The plaintiffs have brought this action against the United States Department of Agriculture ("USDA"), its Rural Housing and Community Development Service ("RHCDS") and the Acting Administrator of RHCDS, seeking a declaratory judgment, temporary restraining order, preliminary injunction and permanent injunction to lift the Department of Agriculture's decision to suspend them immediately "from participation in Government programs including federal financial and non-financial assistance and benefits." USDA Notice of Suspension and Proposed Debarment, July 10, 1995.[1] It is undisputed that the plaintiffs have failed to exhaust available administrative remedies. The defendants have therefore moved to dismiss. The plaintiffs contend that they should not be required to exhaust these administrative remedies because the exercise will be futile, because the suspension will cause them irreparable injury if it is not removed immediately whereas the administrative procedures will take an indeterminate amount of time, because they are raising a constitutional challenge that the agency cannot address in any event, and because disputed facts, for the most part, are not involved. In light of the clear statutory language of the Department of Agriculture Reorganization Act added just last year and requiring exhaustion of remedies, I GRANT the motion to dismiss as to all but one constitutional claim.
After decades of judicial development of a sort of common law of exhaustion requirements prior to judicial review of administrative action, the United States Supreme Court finally decided in Darby v. Cisneros, ___ U.S. ___, ___ _ ___, 113 S.Ct. 2539, 2544-45, 125 L.Ed.2d 113 (1993), to apply the clear language of the Administrative Procedure *44 Act ("APA"). The Court thereby announced a limitation on the development of the judicial doctrine of exhaustion where the APA applies and directed trial and intermediate appellate courts to the language of that statute. Darby, 113 S.Ct. at 2548. Within a year after Darby, a new provision was added to the statute governing the structure of the Department of Agriculture. This new provision stated:

Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against  (1) the Secretary; (2) the Department; or (3) an agency, office, officer, or employee of the Department.
7 U.S.C. § 6912(e) (emphasis supplied). It is hard to imagine more direct and explicit language requiring that a plaintiff suing the Department of Agriculture, its agencies, or employees, must first turn to any administrative avenues before beginning a lawsuit and, as the Supreme Court did in Darby, I must abide by the statutory language.[2]
The plaintiffs make three arguments in their attempt to avoid the clear language of this provision. First, they argue that the language "administrative appeal procedures," whose exhaustion is required, is a term of art referring only to procedures within the "National Appeals Division" of the Department, an appeals procedure that does not apply to the suspension and debarment procedures confronting these plaintiffs. See 7 U.S.C. §§ 6991 et seq.; 7 C.F.R. §§ 1900.51 et seq. I disagree. The term "administrative appeal procedures" is an all-encompassing generic term. It appears in a subchapter of a title whose purpose "is to provide the Secretary of Agriculture with the necessary authority to streamline and reorganize the Department of Agriculture to achieve greater efficiency, effectiveness, and economies in the organization and management of the programs and activities carried out by the Department." 7 U.S.C. § 6901. This location suggests a wideranging effect. The section in which the exhaustion provision appears is the section dealing with the Secretary's authority to delegate various functions to his or her subordinates and is therefore a logical location for a provision requiring exhaustion of administrative appeals before the Secretary or Department is sued. Under the Department's regulations, the suspension the plaintiffs challenge here is explicitly subject to an "appeal" to an administrative law judge within the Department. 7 C.F.R. § 3017.515. That decision in turn is "final and ... not appealable within USDA." Id. It is logical, therefore, to require exhaustion up until that point, and then to permit a lawsuit.
Second, the plaintiffs argue that Congress could not have intended the exhaustion requirement of section 6912(e) to be generally applicable because just a few days after passing the statute containing the exhaustion provision (the Department of Agriculture Reorganization Act of 1994), it also passed the Healthy Meals for Healthy Americans Act of 1994, P.L. 103-448, a statute dealing with child nutrition goods or services. In that statute, Congress included an exhaustion requirement that applies only to "nonprocurement debarment proceeding[s]." 42 U.S.C. § 1769f(f). The plaintiffs argue, therefore, that Congress could not have intended a few days earlier in the Department of Agriculture Reorganization Act of 1994 to impose a general exhaustion requirement. That argument gives too much credit to the ability of Congress to keep track of technical provisions of each statute its members approve. Members of Congress cannot be certain from day to day which statutes will actually pass and are therefore likely to include provisions like these in any number of bills. The only *45 proper way to make sense of what Congress has done here is to employ the plain language of the statute as it passed, language that is all inclusive.
Third, the plaintiffs argue that courts have "waived" similar broad statutory language concerning exhaustion and that I should do so here. The closest language that the plaintiffs have found is a provision governing judicial review of Immigration and Naturalization Service ("INS") orders of deportation or exclusion. The statute there provides that an alien may not seek judicial review unless he or she has "exhausted the administrative remedies available to him as of right under the immigration laws and regulations." 8 U.S.C. § 1105a(c). The cases the plaintiffs cite to support judicial waiver in the face of such language, however, are quite different from the controversy here. In Ramon-Sepulveda v. I.N.S., 824 F.2d 749, 750 (9th Cir.1987), the court was concerned with a challenge to its own authority because INS had essentially ignored the court's previous order. The Ninth Circuit therefore issued a writ of mandamus without requiring the alien to proceed back through the administrative channels in order to obtain enforcement of the court's original order. Ramon-Sepulveda, 824 F.2d at 750-51. Exhaustion was not required in Perkovic v. I.N.S., 33 F.3d 615, 616 (6th Cir.1994), but there the petitioners had first won their case before an immigration judge, then lost on appeal to the Board of Immigration Appeals. The Board remanded to the immigration judge to enter a new decision consistent with its decision and the administrative law judge did so. Perkovic, 33 F.3d at 618. The Sixth Circuit held that administrative remedies had been exhausted without the necessity of another appeal to the Board of Immigration Appeals (the petitioners had conceded all other issues). Id. at 619-20. Finally, Rafeedie v. I.N.S., 880 F.2d 506, 513-15 (D.C.Cir.1989), was a case in which the D.C.Circuit did not require exhaustion as to constitutional claims, a result I reach here as well for reasons explained below. In this Circuit, Athehortua-Vanegas v. I.N.S., 876 F.2d 238, 240 (1st Cir.1989), further rebuts the plaintiffs' argument. In that case, the First Circuit strictly construed section 1105a(c)'s exhaustion requirement, reaching the merits only after ruling that the plaintiff had adequately exhausted his administrative remedies. Athehortua-Vanegas, 876 F.2d at 240.
The plaintiffs also refer me to a number of cases from the Individuals with Disabilities Education Act ("IDEA") and the Social Security Act where the courts have not required exhaustion. The exhaustion provisions of those two statutes, however, are different from that of the Department of Agriculture Reorganization Act. First, both the Supreme Court and the First Circuit have taken pains to point out that the legislative history behind the IDEA provision, 20 U.S.C. § 1415, makes clear that under that statute, exhaustion is not to be required where it would be futile. See Smith v. Robinson, 468 U.S. 992, 1014 n. 17, 104 S.Ct. 3457, 3469 n. 17, 82 L.Ed.2d 746 (1984), superseded in part on other grounds by section 3 of Pub.L. No. 99-372, 100 Stat. 796; Christopher W. v. Portsmouth Sch. Comm., 877 F.2d 1089, 1094 (1st Cir.1989). Second, both these statutes speak in terms of requiring a final agency action, not exhaustion.[3] It is true that the academic commentators have argued that the two concepts overlap substantially and that before Darby the courts treated them as essentially the same. See, e.g., II Kenneth C. Davis & Richard J. Pierce, Jr., Administrative Law Treatise § 15.11, at 355-56 (3d ed. 1994). Darby, however, ruled that the two are conceptually distinct and not to be confused. Darby, ___ U.S. at ___ _ ___, 113 S.Ct. at 2543-44. Third, neither the IDEA nor the Social Security Act contains the blunt prohibition against judicial review without exhaustion that is provided here.
The plaintiffs also argue that exhaustion should not be required because it will create *46 irreparable injury to them, specifically, a financial disaster for which there is no relief available against the defendants. This argument has some appeal, especially in a context where the agency has not provided any promise of speedy final action that would be subject to judicial review. Nevertheless, I conclude that this concern is sufficiently dealt with in the merits of one of the constitutional disputes discussed below, for the issue there is whether the Constitution requires a prompt hearing in connection with the suspension. Part of that analysis involves the weighing of the harm to the plaintiffs, specifically the kind of injury they allege here. It is, therefore, not a separate reason for waiving exhaustion.
For all these reasons, I conclude that the language of section 6912(e) is plain on its face and applies to the plaintiffs here in their challenge to their suspensions. In general, the plaintiffs must exhaust their administrative remedies.[4]
At oral argument on the motion to dismiss, however, the defendants conceded that exhaustion is not required for challenges to the constitutionality of the agency's statutes or regulations. (This is consistent with much of the caselaw on exhaustion, see, e.g., Rafeedie, supra.) The plaintiffs have made two constitutional claims here: (1) that the defendants' actions violated the plaintiffs' substantive and procedural constitutional rights (presumably under the Fifth Amendment); and (2) that the actions were taken in retaliation for the exercise by the individual plaintiff Gleichman of her First Amendment rights. That second constitutional claim, I conclude, should be subject to the exhaustion requirement. It is not an attack on the substantive content of the statute or regulations, but goes instead to the motivations behind and reasons for the actions taken. The administrative appeal process may well resolve those issues, unlike the agency's inability to rule on the constitutionality of its own statute or procedural regulations.
For the reasons stated, therefore, I GRANT the defendants' motion to dismiss the complaint for failure to exhaust administrative remedies as to all the plaintiffs' claims challenging their suspension, except for the constitutional due process claim and as to that claim I DENY the motion to dismiss.

B. TEMPORARY RESTRAINING ORDER
There remains pending the plaintiffs' request for a temporary restraining order prior to the hearing on the preliminary injunction. None of the arguments or materials presented to date deal with the plaintiffs' substantive due process claim. Instead, they bear solely on the procedural due process claim, a claim I construe to be asserting a right to a presuspension or prompt post-suspension hearing under the Fifth Amendment.
In evaluating the request for a temporary restraining order, First Circuit law is clear that I must evaluate four factors: (1) the plaintiffs' likelihood of success on the merits; (2) any irreparable injury to the plaintiffs if the injunction is not granted; (3) the harm to the defendants in granting the injunction; and (4) the public interest. See Planned Parenthood League v. Bellotti, 641 F.2d 1006, 1009 (1st Cir.1981).
I conclude that the plaintiffs have a strong likelihood of success on the merits. The caselaw makes clear that in assessing whether hearings are required in a case like this, the injury to the plaintiff must be weighed against the Government's interests in immediate termination. See Peter Kiewit Sons' Co. v. United States Army Corps of *47 Eng'rs, 534 F.Supp. 1139, 1153 (D.D.C.1982) (governmental blacklisting of a contractor affects a liberty interest, namely, the "right to be free from stigmatizing governmental defamation having an immediate and tangible effect on its ability to do business" and therefore requires a hearing before suspension), rev'd on other grounds, 714 F.2d 163 (1983); Sahni v. Department of Hous. and Urban Dev., 478 F.Supp. 882, 884 (D.D.C.1979) (procedural due process required for HUD suspensions). In Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the United States Supreme Court required evaluation of three distinct factors in assessing what process is due:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
In Barry v. Barchi, 443 U.S. 55, 66, 99 S.Ct. 2642, 2650, 61 L.Ed.2d 365 (1979), the United States Supreme Court held that where the governmental interest is sufficiently strong to justify a suspension without a prior hearing, the constitutional guarantees of due process require that "a prompt postsuspension hearing" "be assured." In that case, the statute specified no time in which the hearing must be held and allowed the decisionmaker up to thirty days after concluding a hearing in which to issue the final order. Barchi, 443 U.S. at 61, 99 S.Ct. at 2647. The suspension there (of a horse trainer's license) was only fifteen days and the court recognized the state's "important interest in assuring the integrity" of the activity under its auspices. Id. at 64, 99 S.Ct. at 2649. Nevertheless, the court approved the fifteen-day suspension without a previous hearing only "pending a prompt judicial or administrative hearing that would definitely determine the issues." Id.; see Horne Bros., Inc. v. Laird, 463 F.2d 1268, 1270-71 (D.C.Cir.1972) (suspension imposed without a hearing can continue in effect for a maximum of one month unless the Government shows specific reasons why a hearing would be prejudicial to important governmental interests).
Here, it is undisputed that no hearing was provided in connection with the suspension. The administrative remedies carry no assurance of speed in any post-deprivation hearing. Specifically, although the plaintiffs can oppose the suspension by making a submission within thirty days, there is no time limit on when the suspending official must act. The only restriction is that "prompt written notice" of the ultimate decision must be sent, 7 C.F.R. § 3017.413(c). At oral argument, I inquired concerning this topic but the defendants' lawyer was unable to make any commitments of speed. Once the decision is made, the plaintiffs must then take a new appeal to the Office of Administrative Law Judges by filing within thirty days, 7 C.F.R. § 3017.515(a). There is then a ninety-day limit on that appeal decision, 7 C.F.R. § 3017.515(c).[5] This procedure clearly fails the Barry v. Barchi test.
Indeed, the record evidence made available to the court to date does not suggest any emergency or overwhelming governmental interest, but instead reveals lengthy negotiations and differing views within the Department as to the significance of many of the alleged problems. This factor also suggests that there is a risk of error that procedural safeguards could alleviate. The injury to the plaintiffs, on the other hand, appears substantial for, although the Government's lawyer has stated that funds will not be "deobligated" in existing projects, the plaintiffs appear to be in the final stages of a number of negotiations for future projects where disqualification will have drastic financial consequences. No reason appears why a prompt post-suspension hearing should not be required.
This discussion of the likelihood of success on the merits obviously incorporates the second *48 and third factors of the Bellotti analysis  irreparable injury to the plaintiffs and harm to the defendants  for the same interests are involved as in the Mathews v. Eldridge and Barry v. Barchi weighing of the need for a hearing. Finally, the public interests in this case are closely identified with that of the Government in representing the taxpayers on the one hand and the public's interest in preserving constitutional procedures and fair treatment on the other hand. It furnishes no weight in either direction in this case.
For those reasons, I GRANT the plaintiffs' request for a temporary restraining order lifting the suspensions.[6] It will continue in effect until the hearing in this matter scheduled on Wednesday, August 9, 1995, at 9:30 a.m. At that time, I invite the lawyers' particular attention to the following issues:
1. To what degree do the plaintiffs have "property" or "liberty" interests at stake under the Fifth Amendment that entitle them to procedural due process as opposed to mere unilateral expectations? See, e.g., Peter Kiewit Sons' Co., supra.
2. What is the Government's interest here in immediate suspension without a prompt hearing?
3. If my conclusion remains the same following the preliminary injunction hearing, what should be the scope and extent of any succeeding order?
4. On the same assumption, what are the defendants prepared to do by way of providing a prompt hearing?
I find that no security is required under Rule 65(c) of the Federal Rules of Civil Procedure pending hearing on Wednesday, August 9, 1995, but the lawyers shall be prepared to address that issue then.
Finally, in light of my action dismissing many of the elements of the plaintiffs' Complaint for failure to exhaust administrative remedies, the lawyers are directed to meet and confer concerning the scope of any evidentiary hearing needed, and to prepare such stipulations as will reduce the amount of testimony and exhibits and conform closely to the pending issue concerning a pre-deprivation or prompt post-deprivation hearing.
SO ORDERED.
NOTES
[1] The plaintiffs' Complaint also seeks relief from proposed debarments, but I understand from later filings that the plaintiffs have chosen to follow the administrative avenues available to challenge the proposed debarments.
[2] See Information Resources, Inc. v. United States, 950 F.2d 1122, 1126 (5th Cir.1992) ("While courts may exercise discretion in applying the judicially created doctrine of exhaustion, such discretion is severely limited with respect to a statutory exhaustion requirement because failure to exhaust deprives courts of jurisdiction."); II Kenneth C. Davis & Richard J. Pierce, Jr., Administrative Law Treatise § 15.3, at 318 (3d ed. 1994) ("Most agency organic acts do not address exhaustion. When they do, however, courts are not free simply to apply the common law exhaustion doctrine with its pragmatic, judicially defined exceptions. Courts must, of course, apply the terms of the statute.").
[3] The IDEA, 20 U.S.C. § 1415(f), does require exhaustion of its procedures before one files a civil action under the Constitution, title V of the Rehabilitation Act or other federal statutes protecting rights of children with disabilities, seeking relief also available under the IDEA. However, the procedures of the IDEA that must be exhausted, 20 U.S.C. § 1415(b)(2), (c) & (e), speak in terms of finality.

The Social Security Act provision, 41 U.S.C. § 405(g), permits judicial review only after a "final decision of the Secretary" has been made.
[4] Although it is not a determining issue in light of the statute's clear language, I am not persuaded by the plaintiffs' argument that exhaustion of administrative remedies will necessarily be futile in this case. The last time the parties came to an impasse over suspension, in 1994, the administrative proceedings led to a consensual settlement between the parties. Furthermore, although the plaintiffs did not discover this until recently, the neutral hearing officer on that earlier occasion had in fact recommended that the charges be dismissed. Finally, as the discovery process has revealed, different views have been expressed within the agency on the appropriateness of the current suspension. Certainly the Government's case is not without difficulty. If in fact it is electing to rescind the earlier settlement agreement and has the authority to do so, one likely outcome is reinstatement of the Page recommendations that the earlier charges be dismissed, the same charges that are listed as some of the reasons for the current suspension.
[5] This delayed procedure also makes clear that exhaustion, if required here, would itself prevent protection of the plaintiffs' constitutional rights.
[6] The temporary restraining order lifts only the general suspensions. It does not prohibit the defendants from considering the plaintiffs' qualifications for individual projects.