145 F.3d 90
 James BASTEK, Russell Kowal, Christopher Pawelski, and
Michael Pillmeier, on behalf of themselves and all
others similarly situated, Plaintiffs-Appellants,
v.
FEDERAL CROP INSURANCE CORPORATION and Dan Glickman, solely
in his capacity as Secretary of Agriculture,
Defendants-Appellees.
 Docket No. 97-6221.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 29, 1998.
Decided May 22, 1998.
 
 Martin R. Gold, Gold, Farrell & Marks, New York City (Robert P. Mulvey, Debra A. Mayer, of counsel), for Plaintiffs-Appellants.
 Irene Chang, Assistant United States Attorney, Southern District of New York (Mary Jo White, United States Attorney, Gideon A. Schor, Assistant United States Attorney, Southern District of New York, of counsel), for Defendants-Appellees.
 Before: CALABRESI, CABRANES and HEANEY,* Circuit Judges.
 JOSE A. CABRANES, Circuit Judge:
 
 
 1
 Plaintiffs James Bastek, Russell Kowal, Christopher Pawelski, and Michael Pillmeier appeal an order of the United States District Court for the Southern District of New York (Barrington D. Parker, Jr., Judge ), dismissing their complaint for failure to exhaust administrative appeals pursuant to 7 U.S.C. § 6912(e). Plaintiffs, who are onion farmers, sought a declaratory judgment that the manner in which defendant Federal Crop Insurance Corporation ("FCIC") calculated indemnities due to plaintiffs as a result of the 1996 growing season failed to comply with the Federal Crop Insurance Act, 7 U.S.C. §§ 1501 et seq. ("FCIA"). They assert that, notwithstanding the exhaustion requirement prescribed by the statute, the district court should have employed exceptions articulated by the courts in so-called common law (or "judicial") exhaustion cases to excuse plaintiffs from the statutory requirement. Defendants FCIC and Dan Glickman, the Secretary of Agriculture, argue that such exceptions are not applicable in the face of an explicit statutory mandate of exhaustion. We affirm the district court's dismissal of plaintiffs' complaint.
 
 I.
 
 2
 Plaintiffs are onion farmers in Orange County, New York. Defendant FCIC is an agency of the United States Department of Agriculture, created to effect the purposes of the FCIA. See id. § 1503. Both the FCIC and Secretary Glickman are authorized to issue regulations implementing the FCIA, as amended by the Federal Crop Insurance Reform Act of 1994, Pub.L. No. 103-354, § 101(a), 108 Stat. 3179 (1994). See id. § 1506(p) (1994).
 
 
 3
 The FCIC offers various kinds of insurance coverage, and so-called catastrophic risk insurance provides the "minimum level of coverage." 7 C.F.R. § 400.651. Under the FCIA, catastrophic risk insurance covers a "50 percent loss in yield ... indemnified at 60 percent of the expected market price, or a comparable coverage (as determined by the [FCIC] )." 7 U.S.C. § 1508(b)(2)(A) (emphasis added).
 
 
 4
 Plaintiffs Bastek, Kowal, and Pawelski purchased catastrophic risk insurance directly from the FCIC, and plaintiff Pillmeier obtained the same coverage from an FCIC-approved private insurance provider.[1] The 1996 growing season witnessed a catastrophe of the type contemplated by the insurance policies: a cold, wet spring gave way to both a late frost and an early heat wave in May. Two hailstorms in June and July and a tropical storm in mid-July completed the damage; the majority of plaintiffs' onion crops were destroyed. Secretary Glickman declared Orange County a disaster area.
 
 
 5
 In early November 1996, plaintiffs filed claims for recovery under their catastrophic risk insurance policies. Meanwhile, after reading a newsletter circulated by the Orange County Farm Service Agency (the "FSA"), plaintiff's counsel, Martin Gold, anticipated that plaintiffs would be awarded less than they desired. Accordingly, he wrote two letters on November 1, 1996: one to Kenneth D. Ackerman, Acting Administrator of the Risk Management Agency of the Department of Agriculture, and one to Secretary Glickman. Both letters took issue with the FCIC policies utilized by the FSA, as agent for the FCIC, to determine the amounts due claimants. The letters accused the FCIC of "arbitrarily using an unrealistic market price and improperly subtracting a salvage factor," resulting in "benefits to farmers which are generally less than 10% of what they should be." Gold asserted that this methodology violated both the FCIA and 7 C.F.R. § 402.4(4)(a), which provide that the farmers should be covered for 50% of the approved yield indemnified at 60% of the expected market price "or a comparable coverage" as determined by the FCIC.
 
 
 6
 Gold never heard directly from Secretary Glickman, but on December 11, 1996, he received a letter from Ackerman, thanking Gold for his letters to Ackerman and Glickman. After explaining the procedure for calculating onion indemnities pursuant to their policies, Ackerman defended the agency's calculation of the established market price for onions, noting that when plaintiffs purchased coverage, they knew what their coverage would be and had the option of purchasing a higher level of protection. The letter never mentioned the specific details of plaintiffs' claims, focusing instead on the general procedure followed by the FCIC in calculating onion insurance indemnities. On January 21, 1997, Gold filed plaintiffs' complaint in the United States District Court for the Southern District of New York, claiming that the FCIC's calculation of the indemnities due to plaintiffs violated the FCIA, and primarily seeking a declaratory judgment requiring the FCIC to use "true" expected market prices ($12.00 per cwt.) rather than "arbitrary" expected market prices ($4.84 per cwt.) to calculate the indemnities.
 
 
 7
 One day later, Larry Atkinson, Director of the Raleigh Regional Service Office of the Department of Agriculture's Risk Management Agency, sent a letter to each individual plaintiff, notifying them that after "thorough review and careful consideration," the agency was unable to approve the claims submitted in November 1996 by each plaintiff. Atkinson defended the agency's calculation of established market price as based on available market data, and noted that the price was part of the insurance contract executed by the plaintiffs, as was the salvage value determination. The letter concluded by outlining three methods of contesting the agency's determination: plaintiffs could (1) file a written request for reconsideration with the Risk Management Agency within 30 days, (2) request appellate review by the National Appeals Division of the Department of Agriculture within 30 days, or (3) request mediation or alternative dispute resolution with the Risk Management Agency within 15 days.
 
 
 8
 Plaintiffs refrained from exercising any of these three administrative options, choosing instead to proceed with their case before the district court. The statute of limitations has now run on all three administrative review options.
 
 II.
 
 9
 On August 28, 1997, Judge Parker granted defendants' Rule 12(c) motion for judgment on the pleadings. We review such dismissals de novo. See Sheppard v. Beerman, 94 F.3d 823, 827 (2d Cir.1996). "All allegations in the complaint must be accepted as true; all inferences must be drawn in favor of the plaintiff; and dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (internal quotation marks and citation omitted).
 
 
 10
 The statute governing administrative appeals falling under the FCIA provides that:
 
 
 11
 Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary [of Agriculture] or required by law before the person may bring an action in a court of competent jurisdiction against--
 
 
 12
 (1) the Secretary [of Agriculture];
 
 
 13
 (2) the Department [of Agriculture]; or
 
 
 14
 (3) an agency, office, officer, or employee of the Department [of Agriculture].
 
 
 15
 7 U.S.C. § 6912(e). Department of Agriculture regulations further provide that "[FCIA] program participants shall seek review of an adverse decision before a Hearing Officer of the [National Appeals] Division,[2] and may seek further review by the Director, under the provisions of this part prior to seeking judicial review." 7 C.F.R. § 11.2(b).
 
 
 16
 In general, exhaustion of administrative remedies is the rule, and waiver the exception, because exhaustion serves myriad purposes, including limiting judicial interference in agency affairs, conserving judicial resources, and preventing the "frequent and deliberate flouting of administrative processes [that] could weaken the effectiveness of an agency." McKart v. United States, 395 U.S. 185, 193-95, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); see also Pavano v. Shalala, 95 F.3d 147, 150 (2d Cir.1996). Exhaustion also allows the agency to develop the factual record of the case, which aids such judicial review as may be available. See James v. United States Dep't of Health & Human Servs., 824 F.2d 1132, 1137-38 (D.C.Cir.1987).
 
 
 17
 Two kinds of exhaustion doctrine are currently applied by the courts, and the distinction between them is pivotal. Statutory exhaustion requirements are mandatory, and courts are not free to dispense with them. Common law (or "judicial") exhaustion doctrine, in contrast, recognizes judicial discretion to employ a broad array of exceptions that allow a plaintiff to bring his case in district court despite his abandonment of the administrative review process.
 
 
 18
 The Supreme Court has directed that "[w]here Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." McCarthy v. Madigan, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (internal citations omitted). With regard to cases governed by the Administrative Procedure Act ("APA"), such as the case at bar, the Supreme Court has instructed that if Congress has not enacted an explicit exhaustion requirement, courts may not exercise their judicial discretion to impose one. See Darby v. Cisneros, 509 U.S. 137, 153-54, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993). However, even in APA-governed cases, if the statute at issue explicitly mandates exhaustion as a prerequisite to judicial review, it must be enforced. See id.
 
 
 19
 Faced with unambiguous statutory language requiring exhaustion of administrative remedies, "[w]e are not free to rewrite the statutory text." McNeil v. United States, 508 U.S. 106, 111, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993). Only in the absence of an explicit statutory exhaustion requirement may courts exercise discretion and "balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." McCarthy, 503 U.S. at 146, 112 S.Ct. 1081. See also id. at 152, 112 S.Ct. 1081 ("Because Congress has not required exhaustion ... we turn to an evaluation of the individual and institutional interests at stake in this case.") (emphasis added); Garrett v. Hawk, 127 F.3d 1263, 1265 (10th Cir.1997); Portela-Gonzalez v. Secretary of the Navy, 109 F.3d 74, 77 (1st Cir.1997) ("[E]xhaustion of administrative remedies is absolutely required if explicitly mandated by Congress.").[3]
 
 
 20
 If Congress has not explicitly required exhaustion, judicial exhaustion doctrine provides that courts may, in their discretion, waive administrative exhaustion under certain circumstances.[4] However, the statutory provision mandating exhaustion contained in 7 U.S.C. § 6912(e) is explicit. Indeed, as one court has observed, "[i]t is hard to imagine more direct and explicit language requiring that a plaintiff suing the Department of Agriculture, its agencies, or employees, must first turn to any administrative avenues before beginning a lawsuit." Gleichman v. United States Dep't of Agric., 896 F.Supp. 42, 44 (D.Me.1995). There can be little doubt that Congress's intent, in enacting this statute, was to require plaintiffs to exhaust all administrative remedies before bringing suit in federal court.
 
 
 21
 Accordingly, because the various exceptions to exhaustion urged by plaintiffs do not apply where, as here, a clear statutory exhaustion requirement exists, plaintiffs' arguments relying on these exceptions are unavailing. See, e.g., Darby, 509 U.S. at 153-54, 113 S.Ct. 2539; McCarthy, 503 U.S. at 144, 112 S.Ct. 1081; Weinberger v. Salfi, 422 U.S. 749, 766, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); Portela-Gonzalez, 109 F.3d at 77; Zipp v. Geske & Sons, Inc., 103 F.3d 1379, 1383 n. 5 (7th Cir.1997).
 
 
 22
 We note, moreover, that to the extent that plaintiffs seek to avoid the exhaustion requirement because they are challenging the FCIC's general policy of calculating indemnities, rather than individual benefit determinations, this issue is expressly addressed by 7 U.S.C. § 6992(d), which provides:
 
 
 23
 If an officer, employee, or committee of an agency determines that a decision is not appealable and a participant appeals the decision to the Director, the Director shall determine whether the decision is adverse to the individual participant and thus appealable or is a matter of general applicability and thus not subject to appeal. The determination of the Director as to whether a decision is appealable shall be administratively final.
 
 
 24
 7 U.S.C. § 6992(d). Under the clear terms of the statute, plaintiffs' argument that their broad challenges to FCIC calculations could not adequately have been presented within normal administrative channels is itself an argument that was required to be tested and exhausted before being presented in federal court. Plaintiffs neither obtained a decision that their claims were too broad to be appealed administratively, nor did they appeal that decision to the Director.
 
 III.
 
 25
 For the reasons stated above, we affirm the judgment of the district court dismissing plaintiffs' complaint. We are aware that, having failed to pursue their administrative remedies initially, plaintiffs are barred by the applicable statutes of limitation from pursuing them now. However, the choice to bring suit in the district court rather than exhausting the required administrative remedies--or, indeed, pursuing both remedies at the same time as a precaution, as litigants often do, in the event that it is determined that exhaustion is required--was entirely plaintiffs' own. 7 U.S.C. § 6912(e) unambiguously required plaintiffs to exhaust their administrative remedies before bringing suit, and their failure to do so deprived them of the opportunity to obtain relief in the district court.
 
 
 
 *
 The Honorable Gerald W. Heaney, of the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 Defendants assert that plaintiff Pillmeier lacks standing to bring this action under the FCIA because he purchased his insurance coverage through an FCIC-approved private provider. The district court declined to address this issue. We resolve the matter here by determining that plaintiff Pillmeier has standing. 7 U.S.C. § 1508(j)(2)(A) provides, in pertinent part, that "if a claim for indemnity is denied by the Corporation or an approved provider, an action on the claim may be brought against the Corporation or the Secretary only in the United States district court for the district in which the insured farm is located." 7 U.S.C. § 1508(j)(2)(A) (emphasis added). The plain language of the statute thus contemplates that a plaintiff who purchased insurance coverage through an approved provider could bring suit against the FCIC or the Secretary of Agriculture in an appropriate district court. Further, plaintiff Pillmeier satisfies the three prerequisites to Article III standing: he alleges that he has suffered a concrete injury in fact; the alleged injury is fairly traceable to defendants' "complained-of conduct"; and it is likely the requested relief will redress the injury. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 118 S.Ct. 1003, 1016-17, 140 L.Ed.2d 210 (1998). The economic injury of which plaintiff Pillmeier complains was allegedly caused by the FCIC calculations he challenges. The declaratory judgment he seeks would require the FCIC to recalculate the indemnities due him, utilizing higher onion prices and eschewing deductions for salvage value--measures that would likely redress his injury
 
 
 [2]
 The National Appeals Division ("NAD") is an agency of the Department of Agriculture, independent from all other Department of Agriculture agencies (such as the FCIC), and subject to the Secretary of Agriculture's supervision. See 7 C.F.R. § 11.2(a). The NAD Director reports directly to the Secretary of Agriculture. See id
 
 
 [3]
 As one noted commentator states, "[m]ost agency organic acts do not address exhaustion. When they do, however, courts are not free simply to apply the common law exhaustion doctrine with its pragmatic, judicially defined exceptions. Courts must, of course, apply the terms of the statute." II Kenneth C. Davis & Richard J. Pierce, Jr., Administrative Law Treatise § 15.3, at 318 (3d ed.1994)
 
 
 [4]
 Such circumstances occur when (1) requiring exhaustion would "occasion undue prejudice to subsequent assertion of a court action"; (2) the administrative remedy is inadequate because the agency cannot give effective relief, e.g., (a) "it lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute"; (b) the challenge is to "the adequacy of the agency procedure itself"; or (c) the agency "lack[s] authority to grant the type of relief requested"; or (3) the agency is biased or has predetermined the issue (also known as "futility"). McCarthy, 503 U.S. at 146-48, 112 S.Ct. 1081; Swirsky v. National Ass'n of Securities Dealers, 124 F.3d 59, 63 (1st Cir.1997). Other circumstances potentially giving rise to a waiver of exhaustion occur when (4) "the claim is collateral to a demand for benefits," or (5) "plaintiffs would suffer irreparable harm if required to exhaust their administrative remedies." Abbey v. Sullivan, 978 F.2d 37, 44 (2d Cir.1992)