Melvyn BENTLEY, Plaintiff,

v.

Dan GLICKMAN, Secretary, United States Department of Agriculture; Christy Marshall, FSA Agricultural Credit Officer; Bradley Blackburn, NAD Hearing Officer; and Norman Cooper, NAD Director, Defendants.

No. 99–CV–169 (LEK/RWS).

United States District Court,
N.D. New York.

March 17, 1999.

· The Clements Firm, Glens Falls, New York, Thomas G. Clements, of counsel, for plaintiff.

Office of United States Attorney, James T. Foley, Albany, New York, Diane Cagino, Asst. U.S. Atty., of counsel, for defendants.

## DECISION AND ORDER

KAHN, District Judge.

This action was brought by Plaintiff Melvyn Bentley ("Bentley") in Bankruptcy Court for the Northern District of New York. It arises out of Bentley's unsuccessful attempts to obtain an Emergency Loan from the Defendants, first acting through his wholly-owned corporation, Annaquasicook Farm, Inc. ("AFI") and later seeking to proceed with the application as an individual. Plaintiff asserts that Defendants have violated their own regulations by refusing to grant his request to have himself substituted for AFI as the applicant, and that the Defendants' various actions in the application process were motivated by illegal discrimination.

By Order signed February 5, 1999, the Honorable Ralph W. Smith, Jr., Magistrate Judge, ordered·that the reference of this action to bankruptcy court be withdrawn for good cause shown pursuant to 28 U.S.C. § 157(b). Presently pending is Plaintiff's motion for summary judgment on his first and second causes of action, both of which are brought under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701–706 (1994). The first cause of action requests an injunction directing that the Defendants substitute him in place of his corporation as loan applicant.

The second cause of action requests that Defendants be directed to grant the Emergency Loan.

Also pending is the Defendants' cross-motion for summary judgment on Plaintiff's entire action, which includes a total of six causes of action. The third cause of action, brought pursuant to the APA and the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 (1994), seeks an order directing Defendants to act on AFI's application for attorneys fees for legal work done in connection with a successful administrative appeal. The fourth cause of action alleges that Defendants have violated 11 U.S.C. § 525 (West Supp.1998) by discriminating against the Plaintiff because he is in bankruptcy. The fifth cause of action alleges that Defendants, acting as lenders, discriminated against the Plaintiff on the basis of age and because he receives public assistance and thereby violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691f (1994). Plaintiff's sixth cause of action seeks attorneys fees for the instant action.

### I. Background

Bentley is a corn farmer in Washington County, New York. Prior to August of 1998, Bentley conducted his farm business entirely through AFI, a corporation of which Bentley was at all times the sole shareholder and only officer. Following bad weather in 1995 and 1996 which had a severe impact on Bentley's farming operation, AFI applied for a low cost Emergency Loan ("EM Loan") of $155,000.00 from the Farm Service Agency ("FSA") of the United States Department of Agriculture. Such loans are authorized by 7 U.S.C. § 1961 (1994), which allows the Secretary of the Department of Agriculture to make low-cost loans to farmers whose operations have been "substantially affected by a natural disaster in the United States...." *Id.* § 1961. Applications for disaster relief loans are made to the FSA according to procedures established in 7 C.F.R. 1945

(1998).[1] If the application is rejected, the applicant may appeal to the Department of Agriculture's National Appeals Division ("NAD"), a review body established and governed by 7 U.S.C.A. §§ 6991, et seq. (West Supp.1998). A properly filed appeal entitles one to an evidentiary hearing conducted by an NAD hearing officer. 7 U.S.C.A. § 6996(a) (West Supp.1998). An adverse decision by the hearing officer can be appealed to the Director of the NAD. The Director's decision is treated as the final determination of the Department, and is reviewable and enforceable by any United States district court in accordance with the terms of the APA. *Id.*, §§ 6998(d), 6999.

In this case, the FSA denied AFI's loan application, allegedly on the basis of AFI's delinquency in repaying a loan by another agency of the Department of Agriculture. AFI administratively appealed to NAD, and by decision dated January 30, 1998, NAD reversed the denial and remanded. On remand, however, the FSA once again denied AFI's application, this time on the grounds that AFI did not have the ability to repay the loan. AFI appealed the second denial of the application. Prior to the hearing, By letter dated September 29, 1998, Plaintiff's counsel, Thomas G. Clements ("Clements") wrote a letter dated September 29, 1998 to Defendant Christy A. Marshall ("Marshall"), the Farm Loan Manager at the FSA responsible for processing AFI's application. In the letter, he stated that "[i]t appears that the continuation of the business of AFI is hopeless. Mr. Bentley has acquiesced in an issuance of an Order of Dismissal of the Chapter 12 Bankruptcy Case of AFI . . . ." Bankr. Compl.Ex. 9. Clements then requested that the EM Loan application filed by AFI be amended to make Bentley the applicant. He stated:

> With respect to AFI, that corporation still exists as a New York corporation.

It is subject to the claims of its many creditors and we believe that all of its hard assets are completely encumbered by secured creditors. To the extent AFI may liquidate accounts receivable, or other unencumbered assets, those moneys will have to be used to equitably pay the claims of its creditors. We do not envision that AFI will be an actively operating corporation in the future.

*Id.*

It appears that Marshall did not issue a formal decision on the request prior to the NAD hearing, which occurred on October 22, 1998. On November 23, 1998, Bradley issued his decision, ruling that the question of substitution was outside the scope of the appeal and upholding the denial of AFI's loan application.

By letter dated November 30, 1998, Marshall formally denied Plaintiff's request to have himself substituted as applicant. She stated that the applicant of the loan was AFI, and that any application at that time by Bentley would be untimely. She also stated that although 7 C.F.R. 145.162(m) allowed for a change in the form of the applicant, there was no change of form present because there was no change of ownership and the corporation continued to exist. Marshall concluded that "[t]his determination is not appealable," Bankr.Compl.Ex. 12, but stated that her conclusion regarding appealability could be appealed.

On December 2, 1998, Plaintiff petitioned the Director of NAD, Defendant Norman Cooper ("Cooper" or "the Director") to review Blackburn's decision upholding the denial of the AFI loan application. Plaintiff did not argue that AFI was entitled to a loan, but asserted that Blackburn had erred in not allowing Plaintiff to substitute himself as applicant and analyzing the application on that basis. On January 25, 1999, the Director upheld Blackburn's decision. Shortly

---

**1.** These regulations refer to the administering agency as the Farmers Home Administration. In 1994, this agency was combined with certain other Department of Agriculture agencies to form the FSA.

thereafter, Plaintiff brought the instant action.

## II. Discussion

### A. Standard of Review

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The burden is upon the moving party to demonstrate an absence of a genuine issue of fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). When determining whether a genuine issue of fact exists, facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

If the movant has demonstrated that no genuine issue of fact exists, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 474 U.S. at 587, 106 S.Ct. 768. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 474 U.S. at 587, 106 S.Ct. 768.

With this standard in mind, the Court will now determine whether either Plaintiff's motion for partial summary judgment on the first two causes of action or Defendants' cross-motion, reviewed as a motion for summary judgment, should be granted.

### B. APA Claims seeking Substitution and Loan Grant

Plaintiff's first and second causes of action request, respectively, that the Defendants be ordered to substitute him for AFI as applicant in the EM Loan application and that Defendants be ordered to grant that application. The claims are brought pursuant to 5 U.S.C. § 704 (1994), a provision of the APA which states in part that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." A court engaging in such review must "compel agency action [which the court finds was] unlawfully withheld or unreasonably delayed," *id.*, § 706(1), and must "hold unlawful and set aside agency action, findings and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." *Id.*, §§ 706(2), (2)(A). In the first and second claims, Plaintiff asserts that Defendants have violated their own regulations by refusing to allow Plaintiff to substitute himself as applicant in AFI's loan application. Specifically, Plaintiff claims that Defendants have violated 7 C.F.R. § 1945.162(m) (1998) which states, in part:

> A change in the form of an applicant between the time of a qualifying loss and the time an EM loan is closed does *not* make the applicant ineligible for EM loan assistance.

*Id.* (emphasis in original). Plaintiff argues that the substitution of himself for his corporation is an example of a valid change in form which does not disqualify one for a loan. Conceding that AFI is probably too burdened with debt to qualify for an EM Loan, Plaintiff alleges that he can run his operation in his individual capacity profitably enough to warrant the granting of a loan. He concludes that Defendants, by illegally refusing to allow the substitution, have in effect wrongfully denied him an EM loan.

■ Defendants argue that Plaintiff's claim must be rejected because he has failed to exhaust administrative appeal procedures, and that Plaintiff's claim fails on the merits because his reading of the relevant regulation is erroneous. The requirement of administrative exhaustion applicable to this case arises out of 7 U.S.C. § 6912(e), which provides:

Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary [of Agriculture] or required by law before the person may bring an action in a court of competent jurisdiction against—

(1) the Secretary [of Agriculture];

(2) the Department [of Agriculture]; or

(3) an agency, office, officer, or employee of the Department [of Agriculture].

*Id.* The Second Circuit has recently noted, in analyzing the force of § 6912(e), that "[s]tatutory exhaustion requirements are mandatory, and courts are not free to dispense with them." *Bastek v. Federal Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir.1998). "[E]ven in APA-governed cases, if the statute at issue explicitly mandates exhaustion as a prerequisite to judicial review, it must be enforced." *Id.* The Second Circuit has found that § 6912(e) is just such an explicit mandate. Accordingly, because this action is brought against officers and employees of the Department of Agriculture, the Court must determine whether "all administrative appeal procedures" in connection with Defendants' failure to accept the substitution of the Plaintiff for his corporation were exhausted.

Plaintiff makes three arguments for why his action is not barred for failure to exhaust. First, he argues that he exhausted administrative procedures because he raised the substitution issue before both the NAD hearing officer, Blackburn, and subsequently before the NAD Director, and asserts that both rejected his request. Second, he claims that he exhausted his appeals because Marshall informed him that her decision was not appealable. Finally, he argues that he need not exhaust because it would be futile.

■ Plaintiff's first argument is that the issue of substitution was reviewed and decided on appeal by both Blackburn, the NAD hearing officer, and subsequently by the Director. Pursuant to 7 U.S.C.A. § 6998(b) (West.Supp.1998), the determination of the Director upholding or reversing the decision of an NAD hearing officer is administratively final. Although the Secretary can grant relief to the appellant notwithstanding an adverse ruling by the Director, *id.* § 6998(d), the law does not provide for any right to appeal to the Secretary. Thus, had the Plaintiff appealed or the Director decided the substitution issue, all appeal procedures would be exhausted.

The record demonstrates that Plaintiff, acting through AFI, did not appeal the substitution issue, nor was that issue decided by either Blackburn or the Director. The appeal to Blackburn was from the second denial of AFI's loan application, not from Marshall's denial of substitution which actually occurred after the appeal was taken. Blackburn's decision relates that he opened the appeal record for five days up until October 27, 1998 to allow Plaintiff to formally appeal the issue of substitution, but stated that Plaintiff, now acting through his attorney, did not avail himself of this opportunity.[2] Further, the petition to the Director for review specifically requested review of "an Appeal Determination by Bradley A. Blackburn...." Dkt. No. 7, Ex. 1. The request mentioned neither Marshall nor her decision. Thus, Plaintiff never properly appealed the issue.

---

**2.** It is, admittedly, somewhat confusing that Blackburn allowed the opportunity to appeal in October a decision which was not apparently made by Marshall until the end of November. However, assuming that no such opportunity was provided, it would not change the Court's conclusion that the issue appealed to Blackburn was the denial of the AFI loan application.

Further, contrary to the Plaintiff's assertions, the substitution issue was not reached by either Blackburn or Cooper. In his written decision, Blackburn explicitly declined to reach the issue:

Upon reviewing the issue in this case, it is concluded that the adverse action to be addressed in this decision is the Agency's denial of EM Loan assistance to AFI, the Appellant in this case. The issuance of a decision in regard to a proposed application for Melvyn Bentley or the issuance of a decision concerning the Agency's opinion concerning a change in the form of the applicant in this case, are *beyond the scope of this hearing and will not be considered or addressed.* Therefore, the scope of this determination will be limited to the. Agency's denial of EM loan assistance applied for by AFI.

Def.Mem.App., Appeal Determination at 2. The Director in turn merely upheld Blackburn's decision, concluding that "(AFI) was the entity which was the subject of the adverse decision, not Melvyn Bentley." *Id.,* Director Review Determination at § 4. The Court finds, therefore, that the denial of substitution was never appealed through the § 6996 process.

Plaintiff's second argument is that the failure to appeal Marshall's denial of his substitution request through the § 6996 procedure cannot be fatal to Plaintiff's claim because Marshall's letter denying the request expressly stated that the decision was "not appealable." Bankr. Compl.Ex. 12. The Court agrees. Plaintiff could not be expected to appeal a decision where he had been instructed that the decision was unappealable. However, this does not end the exhaustion inquiry. While Marshall's refusal to substitute Plaintiff as applicant was not directly appealable, Marshall's determination that her decision was not appealable was subject to review by the Director. Pursuant to 7 U.S.C.A. 6992(d) (West.Supp.1998),

If an officer, employee, or committee of an agency determines that a decision is not appealable, and a participant appeals the decision to the Director, the Director shall determine whether the decision is adverse to the individual participant and thus appealable or is a matter of general applicability and thus not subject to appeal.

*Id.* This procedure is further spelled out in regulations:

Not later than 30 days after the date on which a participant receives a determination from an agency that an agency decision is not appealable, the participant must submit a written request to the Director to review the determination in order to obtain such review by the Director. . . . If the Director reverses the determination of the agency, the Director will notify the participant and the agency of that decision and inform the participant of his or her right to proceed with an appeal.

7 C.F.R. §§ 11.6(a)(1), 11.6(a)(2) (1998). This right to seek review of Marshall's determination of appealability was expressly referenced by Marshall in her letter, which stated: "This determination is not appealable. However, you may request a determination of the National Appeals Division (NAD)." Bankr.Compl.Ex. 12. The letter gave detailed information about the form of the request and the address to which it should be sent, and concluded that, should he petition for such review, "NAD will advise you of its final determination of appealability." Bankr. Compl.Ex. 12.

As noted above, Plaintiff's counsel did file a written request to the Director, but not for review of Marshall's decision or its appealability. Rather, that request was for "review of an Appeal Determination by Bradley A. Blackburn" which affirmed the denial of AFI's loan applicant. Nor did Blackburn's decision reach either the substitution issue or Marshall's opinion. Thus, the petition for review of Blackburn's decision cannot be held to be an implicit review of the question of appealability.

The failure to seek review of a determination of non-appealability issue mandates a conclusion that Plaintiff has not exhausted his appeals. The exhaustion requirement requires that a party exhaust "*all administrative appeal procedures established by the Secretary* before the person may bring an action in a court of competent jurisdiction...." 7 U.S.C.A. 6912 (West Supp.1998) (emphasis added). As the Second Circuit noted, "'[i]t is hard to imagine more direct and explicit language requiring that a plaintiff suing the Department of Agriculture, its agencies, or employees, must first turn to *any administrative avenues* before beginning a lawsuit.'" *Bastek*, 145 F.3d at 94–95 (emphasis added) (alterations in original) (quoting *Gleichman v. United States Dep't of Agric.*, 896 F.Supp. 42, 44 (D.Me.1995)). In *Bastek*, the Second Circuit explicitly found that the review of a determination of appealability was one such avenue which a Plaintiff was required to pursue before commencing his action. *Id.* at 95. Accordingly, Plaintiff's failure to pursue this avenue warrants summary judgment for the Defendants.

Plaintiff's third argument why summary judgment for failure to exhaust is inappropriate is that further appeal to the Director on the substitution issue would have been futile. Plaintiff asserts that Blackburn had discussed the substitution issue with the Director and that, in that discussion, the latter had already made a decision against the Plaintiff on it. Plaintiff asserts that he was not required to make an appeal where the adjudicator had already decided against reversal.

 Plaintiff's argument is once again refuted by an express holding in *Bastek*. In that case, the Second Circuit held that where exhaustion is explicitly required by statute, the courts may make no exceptions for such circumstances as where "the agency is biased or has predetermined the issue (also known as 'futility')...." *Id.*, 145 F.3d at 94, n. 4.[3] Because Plaintiff was thus required to exhaust the issue of appealability, the First and Second Causes of Action must be dismissed.[4]

## C. Equal Access To Justice Act Claim

Plaintiff's third claim alleges that he is entitled to an award of attorney's fees for legal work done in connection with AFI's successful first appeal pursuant to the EAJA, 5 U.S.C. § 504 (1994), and that Defendants have unlawfully failed to act on the fee application. Section 504 states in part that

> [a]n agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust.

---

**3.** Where exhaustion is only a judicially imposed requirement and not a statutory one, there are a number of other circumstances justifying waiver of the requirement, as when "(1) requiring exhaustion would 'occasion undue prejudice to subsequent assertion of a court action'; (2) the administrative remedy is inadequate because the agency cannot give effective relief, *e.g.*, (a) 'it lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute'; (b) the challenge is to 'the adequacy of the agency procedure itself'; or (c) the agency 'lack[s] authority to grant the type of relief requested,' or when "the claim is collateral to a demand for benefits" or "plaintiffs would suffer irreparable harm if required

to exhaust their administrative remedies." *Bastek*, 145 F.3d at 94 n. 4 (quoting *Abbey v. Sullivan*, 978 F.2d 37, 44 (2d Cir.1992)). However, none of these circumstances provide grounds for the statutory exhaustion provision contained in § 6912(e). 145 F.3d at 94–95.

**4.** The Second Cause of Action does not directly involve the issue of substitution; rather, it seeks the ultimate relief of an EM Loan grant. However, because Plaintiff concedes that substitution was a prerequisite to obtaining an EM Loan, the failure to exhaust in connection with the substitution issue is necessarily dispositive of the second cause of action.

**20**

5 U.S.C. § 504(a)(1) (1994). Plaintiff's claim is based on his assertion that AFI, in winning the reversal of the FSA's initial denial of AFI's loan application, was a prevailing party in an adversary adjudication, that AFI was therefore entitled to attorney's fees, and that AFI assigned the claim to attorney's fees to Plaintiff.

 Defendants argue that, even if AFI was entitled to an award of attorney's fees, any assignment to Plaintiff would be invalid under the Anti–Assignment Act, 31 U.S.C. § 3727 (1976), which provides that assignment of any part of a claim or interest in a claim against the United States "may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." These requirements also apply to a claim against a United States agency. *See Saint John Marine Co. v. United States,* 92 F.3d 39, 50 (2d Cir.1996). Thus, assuming *arguendo* that AFI has a valid EAJA claim against the Department of Agriculture, such a claim could only have been assigned to the Plaintiff after satisfaction of the requirements laid out in § 3727. Plaintiff concedes that these requirements are not satisfied.[5] Thus, he does not have standing to prosecute this claim, and the claim is dismissed without prejudice.

### D. Discrimination Against A Debtor

 Plaintiff's fourth claim alleges that the Defendants refused to grant him and AFI a loan because both Plaintiff and AFI had filed petitions in bankruptcy. Plaintiff alleges that such discrimination violates 11 U.S.C.A § 525(a) (West Supp.1998). This provision provides in part that:

> a governmental unit may not deny, revoke, suspend, or refuse to renew a li-

cense, permit, charter, franchise, or other similar grant to [or] discriminate with respect to such a grant against ... a person that is or· has been a debtor under this title or a bankrupt or a Debtor under the Bankruptcy Act ... solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act____

*Id.* In *In re Goldrich,* 771 F.2d 28 (1985), the Second Circuit concluded that a loan or other form of credit guarantee was not "a license, permit, charter, franchise, or other similar grant" and that § 525 did not therefore provide protection against consideration of debtor status in credit arrangements. *Id.* at 30. Although § 525 was amended in the interim between *Goldrich* and the present action, § 525(a) remains the same in all material respects. Therefore, summary judgment is granted to the Defendants on Plaintiff's fourth claim.

### E. Creditor Discrimination

 Plaintiff brings his fifth cause of action pursuant to the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 (1994). This provision makes it unlawful for

> any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of ... age [or] because all or part of the applicant's income derives from any public assistance program. ...

*Id.,* § 1691(a). Plaintiff asserts that Defendants denied him a loan because of his age and because a portion of his income was made up of Social Security Disability benefits.

---

5. Defendants also assert that a NAD hearing is not an "adversary adjudication." This term is defined in relevant part as "an adjudication under section 554 of this title in which the position of the United States is represented by counsel or otherwise...." *Id.* § 504(b)(1)(C). Defendants assert that a NAD hearing is not governed by 5 U.S.C. § 554 but rather by the provisions defining NAD hearing procedures, 7 U.S.C.A. §§ 6691–6699 (West Supp.1998). This argument was rejected in *Lane v. U.S. Dep't of Agriculture,* 120 F.3d 106 (8th Cir.1997).· As Plaintiff's EAJA claim must be dismissed on other grounds, the issue is not here decided.

Defendants argue, *inter alia,* that 'Plaintiff was not the applicant. The ECOA defines "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." *Id.,* 1691a(b). Defendants note that the applicant for the EM Loan was at all times AFI. Although Plaintiff sought to be substituted as applicant, this substitution was never effectuated. Thus, Plaintiff was never the applicant. Further, it is established that a shareholder, even one of a closely held corporation, does not have standing to bring a claim to redress an illegal act of discrimination done to a corporation. *See Gersman v. Group Health Ass'n, Inc.,* 725 F.Supp. 573, 577 (D.D.C. 1989) (president and principal shareholder did not have standing to bring 42 U.S.C. § 1981 claim to redress discrimination injury to corporation), *aff'd,* 931 F.2d 1565 (D.C.Cir.1991), *vacated on other grounds,* 502 U.S. 1068, 112 S.Ct. 960, 117 L.Ed.2d 127, *adhered to, on remand,* 975 F.2d 886 (D.C.Cir.1992), *cert. denied,* 511 U.S. 1068, 114 S.Ct. 1642, 128 L.Ed.2d 363 (1994); *Gregory v. Mitchell,* 634 F.2d 199, 202 (5th Cir.1981) (officers and shareholders do not have standing to bring 42 U.S.C. § 1983 civil rights action to redress injury to corporation); *Erlich v. Glasner,* 418 F.2d 226, 228 (9th Cir.1969) (shareholder, who with wife owned all stock in the corporation, did not have standing to maintain § 1981 action). Thus, this claim must also be dismissed.

Accordingly, it is hereby

ORDERED that Plaintiff's motion for partial summary judgment is DENIED; and it is further

ORDERED that Claim Three is dismissed without prejudice; and it is further

ORDERED that Defendants' cross-motion to dismiss or in the alternative for summary judgment is GRANTED as to the remaining claims, and the action is therefore DISMISSED in its entirety; and it is further

ORDERED that the Clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.