# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 16, 2007

Charles R. Fulbruge III
Clerk

No. 06-30917

DAWSON FARMS, LLC

Plaintiff-Appellant

v.

FARM SERVICE AGENCY, A Division of the United States Department of Agriculture; COMMODITY CREDIT CORPORATION; UNITED STATES ARMY CORPS OF ENGINEERS, VICKSBURG DISTRICT; NATURAL RESOURCES CONSERVATION SERVICE, A Division of the United States Department of Agriculture

Defendants-Appellees

Appeal from the United States District Court for the
Western District of Louisiana,

Before SMITH, BENAVIDES, and DENNIS, Circuit Judges.
DENNIS, Circuit Judge:

The plaintiff, Dawson Farms, LLC, a farm operator, brought suit in the district court against the Farm Service Agency ("FSA"), other agencies of the Department of Agriculture ("USDA"), and the Corps of Engineers, seeking declaratory and injunctive relief and damages. Dawson Farms alleges that the

FSA erroneously determined that Dawson Farms must return $107,172.31 in USDA program benefits because of the company's wetlands violations; and that the agency erroneously intends to withhold future benefits from Dawson Farms for the same reason. The district court dismissed the action for lack of subject matter jurisdiction.

The threshold question in this case is whether 7 U.S.C. § 6912(e) --- providing that a person shall exhaust administrative appeal procedures before bringing a court action against the Secretary of Agriculture, his department or his delegate --- is a jurisdictional prerequisite to subject matter jurisdiction or merely an element of that action. We hold that section 6912(e) is not a jurisdictional rule but the codification of a judicially developed requirement, for which there are recognized exceptions and excuses. In this case, the district court correctly determined that the farm operator failed to exhaust administrative appeal procedures, but it erred in concluding that this failure deprived it of subject matter jurisdiction. Instead of dismissing forthwith on that basis, the district court was required to next address whether the operator had shown that, under the circumstances of this case, it was excepted or excused from the exhaustion requirement. Nevertheless, we affirm the district court's result in dismissing the action, because the farm operator has pointed to no basis in the record or reason in law that supports its exception from the requirement of exhaustion of administrative appeal procedures or that excuses its failure to exhaust all such procedures in this case.

## Statutory-Regulatory Structure

1. Eligibility for USDA Benefits under "Swampbuster" Provisions

Under the so-called "Swampbuster" provisions in the Food Security Act of 1985, codified at 16 U.S.C. § 3821, et seq., farmers become ineligible for crop benefits if the USDA determines that the farmer converted wetlands for

agricultural purposes. Nat'l Wildlife Fed'n v. Agric. Stabilization and Conservation Serv., 901 F.2d 673, 674 (8th Cir. 1990) (quoting 16 U.S.C. § 3821) ("'[A]ny person who in any crop year produces an agricultural commodity on converted wetland shall be ineligible for' federal agricultural subsidies with regard to that commodity."). The USDA defines "converted wetland" as "a wetland that has been drained, dredged, filled, leveled, or otherwise manipulated (including the removal of woody vegetation or any activity that results in impairing or reducing the flow and circulation of water) for the purpose of or to have the effect of making possible the production of an agricultural commodity . . ." 7 C.F.R. § 12.2(a); see also 16 U.S.C. § 3801(a)(4). The Food, Agriculture, Conservation and Trade Act ("FACTA"), enacted in 1990, strengthened the Swampbuster provisions. Under FACTA, the USDA may penalize the conversion of wetlands if agricultural commodity production is possible on the converted land, even if no such commodity is actually produced. 16 U.S.C. § 3821(c); 7 C.F.R. § 12.4(a)(3). FACTA also added a stronger penalty: a conversion may incur a total loss of all USDA benefits on all land the individual controls until the wetland is restored or the loss mitigated. 16 U.S.C. §§ 3821(c), 3822(i); see also Holly Hill Farm Corp. v. United States, 447 F.3d 258, 263 (4th Cir. 2006).

Two USDA agencies, the National Resource Conservation Agency ("NRCS") and FSA, are responsible for the day-to-day administration of the Swampbuster provisions. The NRCS conducts technical determinations of wetlands conversions for agricultural purposes and also evaluates restoration and mitigation plans. 16 U.S.C. § 3822(j); see also 7 C.F.R. § 12.6(c). Once NRCS determines that an individual violated the Swampbuster provisions by converting wetlands, the FSA will determine (1) whether the individual is ineligible for USDA benefits; (2) whether the violations were made in good faith;

3

and (3) whether any other exemptions apply to the wetlands conversion. 7 C.F.R. §§ 12.6(a), 12.6(b)(3)(viii).

Non-USDA agencies have independent and concurrent authority over determining federal regulatory effects of activities in respect to wetlands.[1] The Clean Water Act and corresponding regulations invest the Corps of Engineers with authority to issue permits and regulate the dredging and filling of certain wetlands. United States v. Riverside Bayview Homes, Inc., 474 U.S. 121, 139 (1985); see also In Re Needham, 354 F.3d 340, 344-45 (5th Cir. 2003). If an individual obtains authorization from the Corps of Engineers, the individual can convert his wetlands without losing eligibility for USDA benefits. See Protection of Wetlands, 62 Fed. Reg. 61215, 61216 (Nov. 17, 1997) ("A person may also remain eligible for USDA program benefits if the action has been permitted by the Army Corps of Engineers . . . via the individual permit process."). The Corps of Engineers can also, as in this case, grant an after-the-fact permit, which allows an individual to maintain his eligibility for USDA benefits despite having converted his wetlands. Id.; 33 C.F.R. § 326.3 (e)(1). If the Corps of Engineers identifies a particularly serious violation of the Clean Water Act, that agency may recommend the matter to the Environmental Protection Agency ("EPA") for administrative penalties. See 33 U.S.C. § 1319(g)(1)(B) (investing both the EPA and Corps of Engineers with authority to issue administrative penalties); 1989 Memorandum Between The Department of the Army and the Environmental Protection Agency, Federal Enforcement for the Section 404 Program of the Clean Water Act, available at

---

[1] While the Corps of Engineers and the EPA have concurrent authority over wetlands, the NRCS and FSA are the lead agencies in regulating the conversion of wetlands for agricultural purposes. See Memorandum of Agreement, January 6, 1994, Concerning the Delineation of Wetlands for Purposes of Section 404 of the Clean Water Act and Subtitle B of the Food Security Act, available at http://www.fws.gov/policy/m0222.pdf.

4

http://www.epa.gov/owow/wetlands/ regs/enfmoa.html (identifying the EPA as the lead agency for flagrant violators and allowing the Corps to recommend to the EPA that "administrative penalty action may be warranted."). The EPA has the authority to issue monetary penalties and enforce environmental laws, including the Clean Water Act, through administrative and legal channels. See 33 U.S.C. § 1319(g)(1)(B); 1989 Memorandum Between The Department of the Army and the Environmental Protection Agency, Federal Enforcement for the Section 404 Program of the Clean Water Act, available at http://www.epa.gov/owow/wetlands/ regs/enfmoa.html.

2. Appeals of USDA decisions

The underlying dispute concerns Dawson Farms' ineligibility for USDA benefits under the Swampbuster provisions. While the Commodity Credit Corporation, a wholly-owned government corporation under the USDA, administers the nation's major agricultural commodity programs, including the benefits program in this case, Deaf Smith County Grain Processors v. Glickman, 162 F.3d 1206, 1207 (D.C. Cir. 1998), the FSA is the agency invested with the operational authority to make benefits eligibility determinations. Id. FSA eligibility determinations adhere to the general appeals processes within the USDA. Normally, appeals of FSA eligibility decisions, and also NRCS technical determinations, first proceed to the local arms of the FSA, the County and State Committees. See 7 C.F.R. § 12.6; 7 C.F.R. § 780.6 (FSA appeals); 7 C.F.R. § 780.11 (NRCS appeals); see generally United v. Dierckman, 201 F.3d 915, 918 (7th Cir. 2000). At any point, individuals can appeal to the highest appellate authority within the USDA, the National Appeals Division ("NAD"). See 7 U.S.C. § 6996-998; see generally 7 U.S.C. §§ 6991-7002 (2000); see also 7 C.F.R. § 11.1-3 (2002). The district court then can review and enforce any NAD decision. See 7 U.S.C. § 6999. Before a person may bring an action against the

Secretary or his department or his delegate, however, the person shall exhaust all administrative appeal procedures as provided by 7 U.S.C. § 6912. Section 6912 states:

> Exhaustion of administrative appeals
> Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against--
> (1) the Secretary;
> (2) the Department; or
> (3) an agency, office, officer, or employee of the Department.

The principal issue of law presented in this case is whether 7 U.S.C. § 6912(e) requires the exhaustion of administrative remedies as a prerequisite to federal court subject matter jurisdiction or merely codifies the judicially developed principle under which exhaustion of administrative remedies is favored, but may be excused by a federal court under a limited number of exceptions. Two of the three Circuits that have spoken on the issue have concluded that §6912(e) is not a jurisdictional prerequisite. See Ace Prop. and Cas. Ins. Corp. v. Fed. Crop Ins. Corp., 440 F.3d 992, 999-1000 (8th Cir. 2006); McBride Cotton and Cattle Corp. v. Veneman, 290 F.3d 973, 980 (9th Cir. 2002) (concluding that section 6912(e) is non-jurisdictional); but see Bastek v. Federal Crop Ins. Corp., 145 F.3d 90, 94-5 (2d Cir. 1998) (concluding that section 6912(e) is jurisdictional). Taking their cue from the Supreme Court in Weinberger v. Salfi, 422 U.S. 749, 757 (1975), Ace Prop. and McBride point out that section 6912(e) does not contain the "sweeping and direct" language barring federal court jurisdiction without administrative exhaustion, as did the Social Security Act's exhaustion provision in Salfi, codified at 42 U.S.C. § 405(h). Rather, they point out, section 6912(e) is akin to non-jurisdictional statutory exhaustion provisions found in statutes like the Prison Litigation Reform Act ("PLRA"), codified at 42 U.S.C. § 1997e(a). We

6

agree with the Eighth and Ninth Circuits that section 6912(e) is not a jurisdictional prerequisite for the reasons stated below.

Factual and Procedural Background

Dawson Farms, LLC ("Dawson Farms") owned land with wooded wetlands in Franklin Parish, Louisiana. At issue are the company's two tracts of land, Tract No. 2929 ("Henderson Place") and Tract No. 10733 ("Macgruder Place").

Tract 2929

In 1995, before proceeding to clear this tract, Mr. Dawson, proprietor of Dawson Farms, requested that the NRCS survey this tract for wetlands. An NRCS conservationist inspected Tract 2929 and informed Mr. Dawson of the presence of wooded wetlands on the tract. Mr. Dawson was advised during the visit that he would need to contact the Corps of Engineers for a Clean Water Act permit before manipulating the wetlands areas. The conservationist also told Mr. Dawson that any manipulation of the wetlands areas without a permit would impact his eligibility for USDA benefits. Later that month, NRCS notified Dawson Farms by certified letter of its determination that Dawson Farms had cleared 1.35 acres of wooded wetlands, jeopardizing its eligibility for USDA benefits. After Dawson Farms requested reconsideration, an NRCS field visit was conducted. In its reconsideration decision, the NRCS concluded that the conversion had "minimal effects," and allowed Dawson Farms to retain its eligibility. The NRCS rulings identified all the wetland areas on Tract 2929. In this same decision, NRCS also advised Mr. Dawson that any discharge of dredged or fill material in the wetlands areas would require a Corps of Engineers permit.

As part of a random FSA status review in 2002, the NRCS reviewed the status of Tract 2929 and found extensive manipulation of the tract's wetlands beyond the previously cleared 1.35 acres. NRCS notified Dawson Farms of this

Swampbuster violation in a Preliminary Technical Determination ("PTD") on August 15, 2002. See 7 C.F.R. § 614.2 (n). In this PTD, the NRCS advised Dawson Farms that the determination could be reviewed by a field visit or be submitted to mediation if Dawson Farms requested either option within 30 days, i.e., before September 14, 2002. The PTD also stated that if Dawson Farms did not so request, the PTD would become final, and that the time for appeal from the PTD would elapse thirty days thereafter, i.e., on October 16, 2002. See 7 C.F.R. § 780.15. On May 15, 2003, the County Committee advised Dawson Farms in a letter that the PTD became final on September 14, 2002. In the same letter, the Committee also notified Dawson Farms that it was, therefore, ineligible for crop benefits from 2002 onwards and had thirty calendar days to appeal its decision. The Committee listed three appeals options: application for reconsideration by the County Committee; an appeal to the State Committee; and/or an appeal to the NAD. More than thirty days later, on July 8, 2003, Dawson Farms sought reconsideration by the County Committee contending: (1) no wetlands were converted to farmland; and (2) Dawson Farms had requested a field visit but was never granted one. In its reconsideration decision, on August 18, 2003, the County Committee maintained its position that Dawson Farms was ineligible for USDA benefits and concluded that "[t]he only thing that would be appealable would be the amount of [benefits to be returned]" and not the final determination that wetlands were converted for agricultural production. On August 25, 2003, Dawson Farms responded by asking the County Committee, again, for a reconsideration.

While the foregoing was unfolding, on March 24, 2003, the Corps of Engineers, pursuant to its concurrent authority under the Clean Water Act, issued a Cease and Desist order to Dawson Farms barring any further manipulation of wetlands on Tract 2929. The Corps of Engineers determined

that the manipulation of wetlands identified by the NRCS in its 2002 status review was a flagrant violation of the Clean Water Act, and recommended the matter to the EPA as a case for possible legal action and monetary penalties. See 33 U.S.C. § 1319(g)(1)(B); see also 1989 Memorandum Between The Department of the Army and the Environmental Protection Agency, Federal Enforcement of the Section 404 Program of the Clean Water Act, at III.D, available at http://www.epa.gov/owow/ wetlands/regs/enfmoa.html.

In a September 4, 2003 letter, Dawson Farms attempted to delay the enforcement of the Corps of Engineers' Cease and Desist Order by notifying the Corps of Engineers that it recently filed an "after-the-fact" permit application with the Corps of Engineers. The EPA filed an administrative complaint for monetary penalties against Dawson Farms on November 3, 2003; a Regional Judicial Officer,[2] an Administrative Law Judge within the EPA, was assigned the case. See 40 C.F.R. §§ 22.4, 22.5, 22.13-15, 22.38;

After Dawson filed its answer, but before any hearing had taken place, the EPA filed a motion to dismiss without prejudice on February 6, 2004. The EPA did not immediately explain the reason for its motion. See 40 C.F.R. 22.14(d). Dawson Farms did not oppose the motion. On February 24, 2004, the Regional Judicial Officer issued an opinion that granted the EPA's unopposed motion to withdraw and dismiss without prejudice. In deciding whether a case should be dismissed without prejudice, the Officer considered several factors outlined in United States v. Outboard Marine Corp., 789 F.2d 497, 502 (7th Cir. 1986) and other Circuit cases. He primarily weighed the EPA's failure to provide a justification for the withdrawal against the lack of prejudice to Dawson Farms,

---

[2] The Regional Judicial Officer is an independent employee of the EPA who hears and adjudicates EPA administrative cases. See 40 C.F.R. § 22.4(b). The parties' filings pertaining to this case and the Officer's opinion are part of the record on appeal.

since the withdrawal occurred only three months after the complaint was filed and Dawson Farms did not incur significant time or cost in preparing for trial. Since the Officer found the lack of prejudice outweighed the EPA's failure to justify the withdrawal, the Officer dismissed the complaint without prejudice and notified both sides with a written opinion justifying the case's dismissal without prejudice. Dawson Farms did not appeal the Officer's decision to dismiss the case without prejudice.

Meanwhile, the Corps of Engineers insisted Dawson Farms continue with the permit process. Dawson Farms contended in a letter to the Corps of Engineers that the EPA's withdrawal released it from all charges of wetlands violations and obviated any need to continue with the after-the-fact permit process. After the Corps of Engineers consulted with the EPA about Dawson Farms' contention, the EPA sent Dawson Farms a letter on August 17, 2004 providing the reason for its motion for withdrawal. The EPA explained that it voluntarily filed its motion for withdrawal, because it wanted to let Dawson Farms continue the permit process with the Corps of Engineers. It notified Dawson Farms that the withdrawal only released Dawson Farms from possible monetary penalties for its Clean Water Act violations that the EPA had authority to impose for egregious violations of the Clean Water Act. Since the EPA's complaint only related to possible monetary penalties under the authority of the EPA, the EPA notified Dawson Farms that the EPA's withdrawal did not affect other agency actions pertaining to the underlying wetlands violations. See 33 U.S.C. § 1319(g) (providing the EPA's authority to impose administrative penalties for Clean Water Act violations based on information from the Secretary of the Army, who is the administrator of the Corps of Engineers). Dawson Farms informed the EPA that it continued to dispute the determination that wetlands were converted on this tract.

<u>Tract 10733</u>

Dawson Farms purchased Tract 10733 in 1999 with the intention of clearing the land for farming. Prior to clearing the land, Dawson Farms asked NRCS to inspect the areas it believed might constitute protected wetlands. Before the NRCS could inspect the lands, Dawson Farms proceeded to clear the land relying on an NRCS Soil Survey, a published map showing the different soils in the area. NRCS eventually inspected the cleared areas and found hydric soils, a wetlands indicator, in the cleared areas on October 20, 1999. NRCS determined that Dawson Farms cleared some 3.1 acres of wetlands on Tract 10733 in violation of the FSA. 16 U.S.C. § 3801, et. seq. After receiving notice of the violation, Dawson Farms initially appealed to the County Committee in May 2000, but then submitted an application for a "good faith" determination by the County Committee on June 20, 2000. See 7 C.F.R. § 12.5 (a)(5) (allowing individual to apply for a "good faith" determination, which maintains individual's eligibility for USDA benefits for up to one year while taking corrective actions). In its application, Dawson Farms noted that it had cleared lands relying on the NRCS Soil Survey and carefully tried to avoid potential wetland areas. Dawson Farms also added that "[Dawson Farms] do[es] not plan to dispute the technical determination made by the NRCS team." Dawson Farms continued, "[Dawson Farms] [is] anxious to work with the NRCS to develop a mitigation agreement to restore wetland values according to NRCS requirements." On July 28, 2000, the County Committee ruled in Dawson Farms' favor and found that "Dawson Farms acted in good faith without intent to violate." The County Committee also informed Dawson Farms in the ruling letter that "[a] wetland mitigation plan must be developed with NRCS and agreed upon before the exemption from ineligibility under the good faith provisions will apply." In a letter to the NRCS on September 19, 2000, Dawson

Farms acknowledged that "[i]n order to regain eligibility for USDA benefits, we were given the choice of two options: (1) Restore the wetland. (2) Establish a mitigation site . . . [Dawson Farms] ha[s] chosen the second option." (emphasis added). NRCS responded to Dawson Farms' letter on January 26, 2001 acknowledging that Dawson Farms had chosen the second option. The letter also listed the requirements for establishing a mitigation site. In April, 2001, NRCS and Dawson Farms signed a mitigation agreement, which defined Dawson Farms' obligations in establishing the mitigation site.

In its Wetlands Mitigation Agreement ("Agreement"), Dawson Farms agreed to implement the Agreement within 12 months from the date of signature. Dawson Farms signed the Agreement on June 21, 2001. The Agreement notified Dawson Farms that failure to comply within 12 months may subject Dawson Farms to loss of and/or refund of USDA benefits. See National Food Security Act Manual (NFSAM) § 517.31c.[3] In September 2001, the Corps of Engineers notified Dawson Farms that its conversion of wetlands would also violate the Clean Water Act, but the Corps of Engineers would issue an "after-the-fact" permit contingent on the fulfillment of the mitigation agreement.

More than 12 months elapsed without Dawson Farms' fulfilling its obligations under the Agreement. Dawson Farms requested an extension from the USDA on March 3, 2003. NRCS notified Dawson Farms that the Agreement was not fulfilled within the required time but nevertheless approved an extension to November 1, 2003. The NRCS notified Dawson Farms in the letter granting the extension that after November 1, 2003, "'[a]s a result of non-compliance, [Dawson Farms] will be subject to loss of USDA benefits and/or may

---

[3] The NFSAM describes more specifically the technical application of the Swampbuster provisions. Barthel v. U.S. Dep't of Agriculture, 181 F.3d 934, 937 (8th Cir. 1999).

have to refund prior USDA program benefits.  Additionally the Corps of Engineers . . . may decide to pursue penalties under . . . the Clean Water Act." There is no indication in the record that Dawson Farms ever fulfilled its obligations under the Agreement.

This Lawsuit

Dawson Farms brought this suit on March 2, 2005 against the FSA, NRCS, Corps of Engineers, and Community Credit Corporation to challenge the withholding of benefits.  Its complaint seeks an order compelling the named agencies to pay withheld benefits and reverse any restrictions on continued eligibility based on previous determinations of wetlands violations. The defendants filed a motion for dismissal arguing that Dawson Farms failed to exhaust administrative remedies and that the court was without subject matter jurisdiction to excuse exhaustion.  In its memorandum in opposition to the defendants' motion to dismiss, Dawson Farms argued that it had exhausted administrative remedies and that the government was estopped from arguing that Dawson Farms had failed to exhaust. The district court dismissed the complaint, holding that it lacked subject matter jurisdiction because Dawson Farms had not exhausted its administrative remedies. Dawson Farms appealed and argues that it exhausted all administrative appeal procedures; and, in the alternative, that the § 6912(e) exhaustion requirement is non-jurisdictional and that the circumstances of this case entitle it to be excepted or excused from the exhaustion requirement.

Analysis

A. Standard of Review

We review a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) de novo.  Zephyr Aviation, L.L.C. v. Dailey, 247 F.3d 565, 570 (5th Cir. 2001).

13

B. Dawson Farms Did Not Exhaust All Administrative Appeal Procedures in Respect to Either Tract

Dawson Farms first argues that the EPA's withdrawal of its complaint precludes the defendants as agencies of the federal government from taking administrative actions against the farm operator because of federal wetlands violations. This argument is without merit. Only a judicial or administrative judgment or finding on the merits adverse to one agency would bind all related agencies dealing with the same issue. See Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 402-03 (1940); Boone v. Kurtz, 617 F.2d 435, 436 (5th Cir. 1980). The EPA's withdrawal of its complaint is not a judgment or finding on the merits in respect to the wetlands violations, and therefore had no effect on other agency actions. Instead, the EPA's motion for withdrawal was granted and the case was dismissed without prejudice. A dismissal without prejudice has no legal effect and "leaves the parties in the same legal position as if no suit had been filed." In re Wilson, 442 F.3d 872, 880 (5th Cir. 2006) (quoting Hawkins v. McHugh, 46 F.3d 10, 12 (5th Cir. 1995)).

Dawson Farms failed to exhaust administrative appeal procedures in challenging the agency determinations of its wetlands conversion violations. In respect to Tract 10733, Dawson Farms did not timely appeal the 2002 PTD that concluded wetlands were converted. Dawson Farms appealed the 2002 PTD to the County Committee on July 8, 2003, which was significantly past the date (October 16, 2002) when the PTD became final and the time for appeal expired. In its decision, the County Committee correctly noted that the PTD was no longer appealable at that point in time.[4] Regarding Tract 2929, Dawson Farms

---

[4] The regulations also specifically allow for an appeal to the NAD when another USDA agency deems an issue as not appealable. 7 C.F.R. § 11.6 (a); 7 C.F.R. § 780.5 (c). Dawson Farms did not appeal to the NAD when the County Committee deemed the PTD

14

chose to pursue an "after-the-fact" permit and, and as a condition in its application for a "good faith determination," admitted that it would not dispute the determination that wetlands were converted.[5] Dawson Farms concedes that it did not appeal to the NAD in respect to any adverse determination that wetlands had been converted on either tract. Dawson Farms also did not timely appeal any adverse determination in respect to its benefits eligibility; even if it did ask for reconsideration at the County Committee level for Tract 2929, it never appealed from the County Committee's adverse decision to the final administrative agency within the USDA, the NAD. The NAD itself is composed of two internal appeal levels. Appeals to the NAD are heard before a hearing officer. The officer's conclusions can be appealed to the Director of the NAD, who is considered the last administrative decision-maker for all USDA actions before judicial review. 7 U.S.C. § 6998; Carpenter's Produce v. Arnold, 189 F.3d 686, 688 (8th Cir. 1999). Because Dawson Farms never appealed the lower agencies' decisions to the NAD, and any such appeals now would be untimely, Dawson Farms failed to exhaust its administrative remedies. See Am. Airlines, Inc. v. Herman, 176 F.3d 283, 289 (5th Cir. 1999) ("[E]xhaustion requires only that a party seeking review appeal the decision at issue through all available administrative channels."); cf. Mahon v. USDA, 485 F.3d 1247, 1261-62 (11th Cir. 2007) ("Since it is undisputed that [the plaintiff] failed to sign the request [for an appeal] within the applicable thirty-day period, we find that he failed to exhaust his administrative remedies, and is barred from seeking judicial review.").

---

decision as not appealable.

[5] By pursuing the "after-the-fact" permit process, Dawson Farms implicitly concedes wetlands were converted, since it is seeking a permit and authorization for an admittedly unauthorized and completed conversion.

## C. 7 U.S.C. § 6912(e) Codifies the Judicial Doctrine of Exhaustion

The defendant-appellees argue that 7 U.S.C. § 6912(e) jurisdictionally bars any action or appeal in a federal court against the Secretary or his delegate by a person who has not exhausted all administrative appeal procedures established by the Secretary or required by law.[6] Dawson Farms argues, alternatively, that if it failed to exhaust administrative remedies, the district court had subject matter jurisdiction and should have excused it from the exhaustion requirement under the circumstances of this case. Whether the district court had subject matter jurisdiction so as to excuse the exhaustion requirement constitutes a question of law.

Accordingly, the threshold issue presented on appeal is whether 7 U.S.C. § 6912(e) is a jurisdictional or jurisprudential requirement for the exhaustion of administrative remedies. If §6912(e) is a jurisdictional requirement, it deprives federal courts of jurisdiction to consider excusing a failure to exhaust administrative remedies. If the provision codifies a jurisprudential requirement, however, it merely continues the self-imposed doctrine of judicial restraint, leaving the federal courts with jurisdiction to consider excusing a failure to

---

[6] The district court's citation of 7 U.S.C. § 6999 for the proposition that Dawson Farms' failure to exhaust the administrative appeal procedures deprived it of subject matter jurisdiction was in error. Section 6999 provides that "a final determination of the [NAD] shall be reviewable and enforceable by any United States district court of competent jurisdiction in accordance with chapter 7 of Title 5." Section 6999 does not deal expressly with the situation in the present case in which Dawson Farms brought this action in the district court without exhausting all administrative appeal procedures or obtaining a final determination by the NAD. For the reasons discussed at length in this opinion, it is possible for a party to bring an action without such exhaustion and invoke federal jurisdiction in exceptional and extenuating circumstances, but Dawson Farms has failed to establish that it should be excused or excepted from the exhaustion requirement of §6912(e) in this case. Section 6999 appears to have been added mainly to require that parties seeking review or enforcement of final NAD determinations must do so in the district court rather than the Court of Federal Claims. See Deaf Smith County Grain Processors, 162 F.3d at 1213; Bruhn v. United States, 74 Fed. Cl. 749, 754-55 (Fed. Cl. 2006).

exhaust administrative remedies.  See Ace Prop., 440 F.3d at 996.

The Supreme Court in Weinberger v. Salfi, 422 U.S. 749 (1975) established the standard for determining whether a statutory exhaustion requirement is jurisdictional rather than merely the preservation of a jurisprudential doctrine. In Weinberger,  the Court construed statutory provisions relating to the exhaustion of administrative remedies in the Social Security Act, codified at 42 U.S.C. § 405(h), as jurisdictional.  Importantly, the Court described the exhaustion provision in that statute as "sweeping and direct" and "plain from its own language" that no federal court action shall be brought unless exhaustion was satisfied.  Id. at 757-58.  42 U.S.C. § 405(h) explicitly mentions and deprives all forums, including courts, of jurisdiction when administrative remedies are not fully exhausted.  Id. at 757-59 & n.4 (preventing review "by any person, tribunal, or government agency" unless the exhaustion requirements provided in the statute are fulfilled) (quoting 42 U.S.C. § 405(h)).

1. The Split Among the Circuits

The Eighth and Ninth Circuits have held that the 7 U.S.C. § 6912(e) exhaustion requirement is jurisprudential rather than jurisdictional in its effect. The Second Circuit's contrary view is that § 6912(e) is a prerequisite to a district court's subject matter jurisdiction in a person's suit against the Secretary, the USDA, or any of its agencies, officers or employees.

The Second Circuit construed 7 U.S.C. § 6912(e) as a jurisdictional requirement in Bastek, 145 F.3d at 94-95 (citing Gleichman v. USDA., 896 F. Supp. 42, 44 (D. Me. 1995)).  The Second Circuit, following Gleichman, concluded that section 6912(e)'s statutory language "explicitly" and clearly requires plaintiffs to exhaust administrative remedies within the USDA before federal courts can have jurisdiction over the claims.  The Second Circuit's conclusion that 7 U.S.C. § 6912(e) is jurisdictional results from its conclusion that Congress

would not have conditioned the right of action on the exhaustion of administrative appeal procedures if it had intended the requirement to have the same effect as a "judicially-developed" doctrine. Id.; see also McBride Cotton and Cattle Corp. v. Veneman, 290 F.3d 973, 980 (9th Cir. 2002).

By contrast, the Eighth and Ninth Circuits construe 7 U.S.C. § 6912(e) as a statutory codification of a jurisprudential requirement. Ace Prop., 440 F.3d at 999-1000; McBride, 290 F.3d at 980. Both decisions were issued subsequent to the Second Circuit's decision and persuasively criticize the Second Circuit's analysis.[7] Ace Prop., 440 F.3d at 999; McBride, 290 F.3d at 980. Both decisions concluded that the mere fact that a statutory provision demands exhaustion does not turn the statutory provision into a jurisdictional bar.[8] Ace Prop., 440 F.3d at 999; McBride, 290 F.3d at 980. According to these decisions, the Second Circuit thus incorrectly assumed that all statutory exhaustion requirements are jurisdictional. Ace Prop., 440 F.3d at 999; McBride, 290 F.3d at 980. As the Eighth and Ninth Circuits note, a statutory exhaustion requirement can be merely a codification of a judicially developed exhaustion requirement that does not necessarily deprive district courts of their doctrinal authority to excuse exhaustion under certain circumstances. McBride, 290 F.3d at 980; Ace Prop., 440 F.3d at 999. Thus, they concluded, whether a statutory exhaustion

---

[7] In addition to the reasons below, the Eighth Circuit notes the Second Circuit's standard for finding a jurisdictional bar is lower than the Supreme Court's standard established in Salfi. The Second Circuit found only "explicit" language requiring exhaustion; this "explicit" language does not rise to the Supreme Court's "sweeping and direct" standard for construing a statutory provision as a jurisprudential bar. Ace Prop., 440 F.3d at 999 (quoting Salfi, 422 U.S. at 757).

[8] The D.C. Circuit has even indicated that there is a presumption against construing a statutory exhaustion provision as jurisdictional. See Avocados Plus Inc. v. Veneman, 370 F.3d 1243, 1248 (D.C. Cir. 2004). Statutory exhaustion provisions are rarely a jurisdictional bar. McBride, 290 F.3d at 978; I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton TRI Indus., 727 F.2d 1204, 1208 (D.C. Cir. 1984).

requirement is a jurisdictional requirement and not just a codification of the jurisprudential requirement turns on the statutory language itself. Ace Prop., 440 F.3d at 999; McBride, 290 F.3d at 980. Both decisions extensively analyzed 7 U.S.C. § 6912(e)'s statutory language and compared the language to similar language in other statutes, most notably the Prison Litigation Reform Act (PLRA),42 U.S.C. § 1997e(a).[9] Ace Prop., 440 F.3d at 998-99; McBride, 290 F.3d at 979-80. All other Circuits, including ours, have construed 42 U.S.C. § 1997e(a) as a codification of the jurisprudential exhaustion requirement.[10] See Ace Prop., 440 F.3d at 998. Accordingly, the Eighth and Ninth Circuits concluded that 7 U.S.C. § 6912(e) was also only a codification of the jurisprudential exhaustion requirement. Ace Prop., 440 F.3d at 998-1000; McBride, 290 F.3d at 979-80.

The Eighth Circuit in Ace Prop., 440 F.3d at 998, concluded that 7 U.S.C. § 6912(e), like 42 U.S.C. § 1997e(a), only addresses whether a person should exhaust administrative remedies and does not specifically limit or condition the jurisdiction of the federal courts. "Its directive is addressed to the individual litigant rather than the court, and it pertains to the time when an action may be

---

[9] 42 U.S.C. § 1997e(a) reads:

(a) Applicability of administrative remedies

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

[10] While Booth v. Churner, 532 U.S. 731 (2001), which emphasized Congress' intent to demand exhaustion of all administrative remedies in the PLRA, may cast some doubt on this conclusion, Circuits ruling on the PLRA's exhaustion requirement subsequent to Booth still all view the exhaustion requirement in the PLRA as a statutory codification of the jurisprudential requirement. See Ace Prop., 440 F. 3d at 999 and cases cited therein from the D.C., Second, Fourth, and Tenth Circuits.

brought in federal district court." Ace Prop., 440 F.3d at 999. The Eighth Circuit examined similar language in the PLRA, which does not mention the federal courts when discussing exhaustion and is also directed towards the individual litigant. Id. As the Eighth Circuit observed, all Circuits have found this litigant-centric language in the PLRA to be a codification of a jurisprudential requirement and not a jurisdictional bar. Id. at 998. Cf. Wright v. Hollingsworth, 260 F.3d 357, 358 n.2 (5th Cir. 2001). Analogously, the litigant-centric language in 7 U.S.C. § 6912(e) implies it is also a codification of the jurisprudential exhaustion requirement.

The Ninth Circuit likewise compared the language in 7 U.S.C. § 6912(e) to two other similar statutory exhaustion provisions, the PLRA and 43 C.F.R. § 4.21(c),[11] which the Ninth Circuit held to be codified jurisprudential principles in previous cases. Like those provisions, the Ninth Circuit noted that 7 U.S.C. § 6912(e) similarly "does not limit the district court's subject matter jurisdiction over the plaintiff's claims," because section 6912(e) does not contain the "sweeping and direct" language depriving a federal court of jurisdiction. McBride, 290 F.3d at 980. The Ninth Circuit, therefore, decided that 7 U.S.C. § 6912(e)'s exhaustion requirement is jurisprudential.

2. Fifth Circuit precedent

The Government cites to three cases from the Fifth Circuit in support of its argument that the Second Circuit's approach towards section 6912 should be followed: Townsend v. U.S. Dep't of Justice Immigration & Naturalization Serv., 799 F.2d 179, 181 (5th Cir. 1986), Meliezer v. Resolution Trust Co., 952 F.2d 879,

---

[11] The provision reads: "No decision which at the time of its rendition is subject to appeal to the Director or an Appeals Board shall be considered final so as to be agency action subject to judicial review." See also Anderson v. Babbitt, 230 F.3d 1158, 1162 (9th Cir. 2000).

882 (5th Cir. 1992), and Taylor v. U.S. Treasury Dep't, 127 F.3d 470, 475 (5th Cir. 1997). The Government primarily relies on dicta in Townsend that concluded: "[w]hen exhaustion is statutorily mandated, the requirement is jurisdictional." Towsend, 799 F.2d at 181; see also Taylor, 127 F.3d at 475 (citing to Townsend, 799 F.2d at 181).

The three cases relied upon by the government are clearly distinguishable, however, because they dealt with differently worded statutes. In both Townsend and Meliezer, the statutory provisions at issue, unlike section 6912(e), explicitly mention the "courts" and directly limit their jurisdiction.[12] Taylor actually undermines the Government's argument. In Taylor, we found no "express statutory requirement of exhaustion," because the statutory provision did not "expressly require exhaustion of particular administrative remedies . . . [the statutory provision] plainly does not constitute the 'clear, unequivocal' manifestation of Congressional intent necessary to render exhaustion of administrative remedies a jurisdictional prerequisite." 127 F.3d at 476. Consistent with Taylor, we do not read these Fifth Circuit cases as following the approach of Bastek. We do not read every statutory provision that refers to the exhaustion of administrative remedies as statutorily "mandating" exhaustion. We read these three cases, and particularly Taylor, as efforts to determine when statutory language can be read as "mandating" exhaustion before federal courts have jurisdiction. Taylor requires a "'clear, unequivocal' manifestation of Congressional intent necessary to render exhaustion of administrative remedies

---

[12] The statute at question in Townsend was 8 U.S.C. § 1105a(c), which reads, "[a]n order of deportation . . . shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations." (emphasis added). The statute at question in Meliezer was 12 U.S.C. § 1821(d)(13)(D), which reads, "[e]xcept as otherwise provided in this subsection, no court shall have jurisdiction over– . . ." (emphasis added).

21

a jurisdictional prerequisite." Id. Recent cases establish equally exacting standards for determining whether statutory language should be read as "mandating" exhaustion. See, e.g., Premiere Network Servs., Inc. v. SBC Comm'ns, Inc., 440 F.3d 683, 686 n.5 (5th Cir. 2006) (interpreting the phrase "statutorily mandated" to mean "textually required.").

For these reasons, we agree with the Ninth and Eighth Circuits that one important factor in deciding whether exhaustion is "textually required" or "statutorily mandated" is whether the statute explicitly mentions and deprives federal courts of jurisdiction if administrative remedies are not exhausted. Here, section 6912(e) focuses on the individual litigant and does not expressly deprive the courts of jurisdiction if the individual litigant fails to exhaust administrative remedies. In addition, the reasoning behind the Eighth and Ninth Circuits' analogy between the PLRA and 7 U.S.C. § 6912(e) is persuasive. Ace Prop., 440 F.3d at 998. We too have construed PLRA's exhaustion requirement as jurisprudential. See Hollingsworth, 260 F.3d at 358 n.2. Therefore, we now join the Eighth and Ninth Circuits in holding that § 6912(e) analogously codifies the jurisprudential doctrine of exhaustion and is not jurisdictional.[13]

D. No Excuse of Administrative Exhaustion Is Applicable

---

[13] This holding is consistent with recent Supreme Court dicta regarding statutory jurisdictional requirements. In Bowles v. Russell, 127 S. Ct. 2360, 2363-66 (2007), the Court found the time limits for filing a notice of appeal are jurisdictional. The Court noted that statutory time limits are jurisdictional because they are "grounded in a statute" and "Congress forbids federal courts from adjudicating an otherwise legitimate 'class of cases' after a certain period has elapsed from final judgment." Id. at 2365-66 & n.3 (internal citations and quotations omitted) (emphasis added). First, cases regarding statutory time limits are explicitly directed at the courts and therefore are distinguishable from exhaustion requirements, such as section 6912, that are focused on litigants. According to Bowles, when Congress directly "forbids" federal courts from deciding a "class of cases" in a statute, the courts can then justifiably infer a jurisdictional bar. Id. The words of Section 6912 do not limit federal court jurisdiction or easily imply a Congressional intent to "forbid" federal courts from hearing unexhausted claims against the USDA in exceptional circumstances.

Concluding that section 6912(e) is a codification of the jurisprudential doctrine of exhaustion does not end our analysis. We must determine whether excusing the exhaustion of administrative remedies is warranted in this case. See, e.g., Taylor, 127 F.3d at 476-77. Overcoming the jurisprudential requirement for administrative exhaustion is difficult. As we noted in Central States, "[t]hese exceptions [to administrative exhaustion] apply, however, only in extraordinary circumstances." 826 F.2d at 329. There are limited bases for excusing administrative exhaustion.

> "Traditional circumstances in which courts have excused a claimant's failure to exhaust administrative remedies include situations in which (1) the unexhausted administrative remedy would be plainly inadequate, (2) the claimant has made a constitutional challenge that would remain standing after exhaustion of the administrative remedy, (3) the adequacy of the administrative remedy is essentially coextensive with the merits of the claim (e.g., the claimant contends that the administrative process itself is unlawful), and (4) exhaustion of administrative remedies would be futile because the administrative agency will clearly reject the claim."

Taylor, 127 F.3d at 477. In addition, exhaustion may be excused when (5) irreparable injury will result absent immediate judicial review. Rhodes v. United States, 574 F.2d 1179, 1181 (5th Cir. 1978).

None of the grounds for excusing administrative exhaustion have been demonstrated to exist in this case. Dawson Farms' brief does not sufficiently describe the reasons supporting its broad and unsupported contention that all grounds for excusing administrative exhaustion apply here. Therefore, we must consider its argument on those grounds to have been waived. See McKethan v. Texas Farm Bureau, 996 F.2d 734, 739 n. 9 (5th Cir.1993) (failure to sufficiently brief an issue constitutes waiver of the issue). Assuming arguendo that some grounds are not waived, based on the facts and Dawson Farms' conclusory

statements, Dawson Farms apparently argues that the administrative remedies were plainly inadequate and that any appeal would have been futile. Its unexhausted administrative procedures consisted of its appeal to the NAD and its completion of the process for obtaining an "after the fact" permit from the Corps of Engineers. Dawson Farms has failed to show that either of these procedures would have been inadequate or futile had it been timely and diligently pursued. The records shows instead that Dawson Farms simply allowed its time to elapse without consistently persevering along either administrative avenue.

Because Dawson Farms failed to exhaust all of its administrative appeal procedures and remedies and no excuse or exception has been shown to be applicable, summary judgment in favor of the defendants was appropriate.

E. Estoppel Is Not Applicable

Dawson Farms also contends that the EPA's withdrawal of its complaint against the farm operator without prejudice equitably estops the defendants from arguing that the farm operator should not be excused from its obligation to exhaust all of its administrative remedies. Dawson Farms' argument is not persuasive. The case law establishes a difficult hurdle in urging estoppel against the government. "In order to establish estoppel against the government, a party must establish affirmative government misconduct in addition to the four traditional elements of estoppel." Taylor, 127 F.3d at 474. As in Taylor, we do not need to reach the four elements of estoppel, because Dawson Farms has not alleged any government misconduct. See id. Dawson Farms' mistaken impression that EPA's withdrawal and dismissal of its complaint without prejudice barred other agencies' actions based on its wetlands conversion violations cannot furnish grounds for estoppel. See Weiszmann v. Dist. Eng'r, U.S. Army Corps of Eng'rs, 526 F.2d 1302, 1305 (5th Cir. 1976) (holding that Corps's passive observance of

24

developer's dredging of canal and developer's mistaken belief that a permit was unnecessary did not constitute grounds for equitable estoppel).[14]

## Conclusion

While failure to exhaust administrative remedies usually results in a dismissal without prejudice, see Taylor, 127 F.3d at 478 & n.8, when exhaustion is no longer possible, dismissal may be with prejudice. See Walker v. Thompson, 288 F.3d 1005, 1009 (7th Cir. 2002) ("Dismissal for failure to exhaust is without prejudice and so does not bar the reinstatement of the suit unless it is too late to exhaust. . ."); cf. Marsh v. Jones, 53 F.3d 707, 710 (5th Cir. 1999). As exhaustion of administrative remedies is too late for the claims in this case, we AFFIRM the district court's judgment, but MODIFY the judgment to dismiss with prejudice for the reasons stated above.

---

[14] Dawson Farms' argument that its pursuit of an "after-the-fact" permit and EPA's subsequent withdrawal of its complaint somehow foreclosed appeals within the USDA is without merit. Dawson Farms did untimely appeal the PTD that wetlands were converted to the local County Committee within the USDA before actually pursuing the "after-the-fact" permit. The PTD letter specifically notified Dawson Farms that an appeal to other appellate levels within the USDA was possible. Dawson Farms could have timely appealed to the NAD before pursuing the "after-the-fact" permit.