# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 24, 2020

Lyle W. Cayce
Clerk

No. 18-31183

Kenneth Donahue,

*Plaintiff—Appellant*,

*versus*

Alonzo Wilder, Doctor; Courtney Channey, Nurse; Jason Ard, Sheriff,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:15-CV-499

Before Smith, Willett, and Duncan, *Circuit Judges*.

Per Curiam:*

While incarcerated at the Livingston Parish Detention Center (LPDC), Kenneth Donahue made several visits to medical staff, Nurse

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 18-31183

Courtney Chaney[1] and Physician Assistant[2] Alonzo Wilder, complaining of pain in his right foot. Ultimately, doctors had to amputate his toes. Donahue filed this suit, seeking damages, alleging state law negligence claims under Louisiana law, and alleging violations of his constitutional rights under 42 U.S.C. § 1983. Donahue asserts that Chaney, Wilder, and LPDC's Sheriff, Jason Ard,[3] failed to provide him with proper medical care. The district court granted Defendants' Motion for Summary Judgment, dismissing Donahue's Amended Complaint without prejudice,[4] because Donahue had failed to exhaust LPDC's three-step administrative Grievance Procedure prior to filing suit, as required by both the Louisiana Prison Litigation Reform Act and the Federal Prison Litigation Reform Act. We affirm.

I

In October 2014, Donahue began to seek treatment at LPDC for pain in his right foot. Unfortunately, Donahue's health issues worsened, and, in

---

[1] While the case caption spells Defendant Courtney Chaney's last name as "Channey," she represents that it is, in fact, spelled "Chaney."

[2] While the case caption states that Defendant Alonzo Wilder is a doctor, Wilder represents that he is, in fact, a physician assistant.

[3] Approximately two years after Donahue filed this suit against Chaney and Wilder, Donahue filed an amended complaint and added Sheriff Ard as a defendant.

[4] We have jurisdiction over Donahue's case. While a dismissal without prejudice, generally, is not appealable, in this instance, a dismissal without prejudice for failure to exhaust administrative remedies may effectively be final, as Donahue is now time-barred from attempting to exhaust his administrative remedies at LPDC. *See Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017) (reviewing, on appeal, claims that magistrate judge dismissed without prejudice for failure to exhaust administrative remedies); *McMillan v. Dir., Tex. Dep't of Crim. Just., Corr. Inst. Div.*, 540 F. App'x 358, 358 (5th Cir. 2013) (reviewing, on appeal, the dismissal without prejudice of § 1983 complaint for failure to exhaust administrative remedies). *See also Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 607 (5th Cir. 2007) (modifying district court's judgment to dismiss without prejudice for failure to exhaust administrative remedies to a dismissal with prejudice since "exhaustion of administrative remedies [wa]s too late for the claims.").

December 2014, he was admitted to the University Health-Shreveport Hospital, where doctors performed surgery to amputate all the toes on his right foot.

After Donahue was transferred from LPDC to Dixon Correctional Institute, Donahue decided to submit an administrative grievance to LPDC regarding his alleged improper medical treatment. LPDC has an Inmate Grievance Procedure that permits inmates to "request a grievance form in order to make his/her complaint known to a higher authority." LPDC's Grievance Procedure follows a three-step process. At Step One, the inmate files a written complaint, which is reviewed by the First Respondent; the First Respondent then issues a response to the inmate.[5] At Step Two, the inmate may request that the Warden review the First Respondent's response if the inmate forwards his request to the Warden within five days of receiving the First Respondent's response; the Warden then issues a response to the inmate.[6] Finally, at Step Three, the inmate may request that the Sheriff review the Warden's response if the inmate submits an appeal to the Sheriff within five days of receiving the Warden's response; the Sheriff renders a final decision for the inmate, at which point an inmate has completed LPDC's Grievance Procedure.[7]

---

[5] Step One of LPDC's Inmate Grievance Procedure provides: "Step One: The Warden will screen the grievance and if accepted, the form will be sent to the First Respondent. The inmate will be notified that the grievance is rejected or is being processed. The step one or First Respondent has fifteen (15) days to reply to the inmate."

[6] Step Two of LPDC's Inmate Grievance Procedure provides: "If the inmate wishes to have the response of the First Respondent reviewed by the Warden, he/she must forward the request within five (5) days of the initial response. The Warden will review and render his response within twenty-five (25) days."

[7] Step Three of LPDC's Inmate Grievance Procedure provides: "If the inmate wishes to have the Warden's decision reviewed by the Sheriff, his/her appeal must be sent

No. 18-31183

Donahue started off well. On February 23, 2015, Donahue, who was represented by counsel throughout the process, initiated Step One of LPDC's Grievance Procedure by mailing a handwritten document to LPDC, entitled "THIS IS A REQUEST FOR ADMINISTRATIVE REMEDY – ADMINISTRATIVE PROCEDURE REMEDY." As First Respondent, Lieutenant Thomas Martin received, reviewed, and rejected Donahue's complaint; the First Respondent faxed Donahue the rejection on March 18, 2015, which Donahue signed that day. Also on March 18, 2015, Donahue began Step Two of LPDC's Grievance Procedure by mailing a "Request for Warden's Review," which LPDC's Warden, Perry Rushing, received on March 24, 2015. The Warden reviewed Donahue's complaint and faxed Donahue a written response on April 13, 2015. But, this time, Donahue did not—and, in fact, refused to—sign the Warden's response. Of significance, Donahue never submitted a "Request for Sheriff's Review," as required by the third and final step of LPDC's Grievance Procedure. Instead, on April 13, 2015, Donahue wrote a handwritten document, which he addressed and mailed to the First Respondent and the Warden on April 14, asking for their review of his complaint.

On July 31, 2015, Donahue, represented by counsel, filed suit against Chaney and Wilder, seeking monetary damages and raising state law negligence claims under Louisiana law and violations of 42 U.S.C. § 1983, alleging that they failed to provide Donahue adequate medical treatment while he was incarcerated at LPDC. On July 10, 2017, Donahue filed an Amended Complaint that added Sheriff Ard as a defendant and asserted the

---

within five (5) days. The Sheriff or his designee will make the final decision within forty (40) days of his receipt of the grievance."

same claims. Defendants filed Motions for Summary Judgment to dismiss Donahue's Amended Complaint.

On October 10, 2018, the district court granted the Defendants' Motions for Summary Judgment, dismissing all claims without prejudice, because Donahue had failed to exhaust LPDC's Inmate Grievance Procedure, as required under both the Louisiana Prison Litigation Reform Act (Louisiana PLRA), LA. STAT. ANN. § 15:1184(A)(2), and the Federal Prison Litigation Reform Act (Federal PLRA), 42 U.S.C. § 1997e(a). Donahue now appeals.[8]

At issue on appeal is whether Donahue's April 13, 2015 letter to the First Respondent and the Warden constituted an appeal to the Sheriff to satisfy Step Three of LPDC's Grievance Procedure and thereby exhausted Donahue's available administrative remedies.

II

We review summary judgment de novo. *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir. 2003). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We review the dismissal of an inmate's 42 U.S.C. § 1983 complaint for failure to exhaust administrative remedies, as required by § 1997e(a), de novo. *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999).

Failure to exhaust is an affirmative defense, for which the defendant has the burden of proof. *Jones v. Bock*, 549 U.S. 199, 216 (2007). "At the summary-judgment stage, . . . defendants 'must establish beyond

---

[8] Donahue also applied for leave to proceed *in forma pauperis* on appeal, which the district court denied on the grounds that Donahue's appeal was not taken in good faith. We need not address this issue since Donahue has not raised it on appeal.

peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor.'" *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).

## III

On appeal, Donahue argues that LPDC's administrative remedies were unavailable to him, or, alternatively, that he exhausted administrative remedies at Step Three because his April 13, 2015 letter to the First Respondent and the Warden was timely and written to advance his grievance. Although Donahue raised § 1983 claims and state-law claims against the Defendants, the requirements under the Louisiana PLRA and Federal PLRA are substantively similar, so we consider both together.

The Louisiana PLRA provides that "[n]o prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted." LA. STAT. ANN. § 15:1184(A)(2). Under Louisiana law, if an inmate files suit "prior to exhaustion of administrative remedies, the district court lacks jurisdiction over the matter, and the suit shall be dismissed without prejudice." *Boudreaux v. La. Dep't of Pub. Safety & Corr.*, 222 So.3d 63, 66 (La. Ct. App. 2017).

Similarly, the Federal PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." § 1997e(a). In *Woodford v. Ngo*, the Supreme Court held that exhaustion is "mandatory" under the PLRA. 548 U.S. 81, 85 (2006). While an inmate must properly exhaust administrative remedies before filing suit, the text of § 1997e(a) possesses "one significant qualifier" to the mandatory exhaustion requirement: the administrative remedies must be "available" to the prisoner in order to be exhausted. *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).

Three types of circumstances exist in which an administrative remedy may be deemed unavailable to a prisoner: (1) when the administrative remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60. If an administrative remedy is available to a prisoner, we take a "strict approach" to § 1997e(a)'s mandatory exhaustion requirement, "under which prisoners must not just substantially comply with the prison's grievance procedures, but instead must 'exhaust available remedies *properly*.'" *Wilson v. Epps*, 776 F.3d 296, 299–300 (5th Cir. 2015) (quoting *Dillon v. Rogers*, 596 F.3d 260, 268 (2010)).

We find no evidence in the record to support Donahue's arguments on appeal that LPDC's administrative remedies should be deemed "unavailable" so as to excuse Donahue from the Federal PLRA's mandatory exhaustion requirement.

First, Donahue argues that LPDC's administrative procedure "operates as a simple dead end—with officers unable or unwilling to provide any relief to aggrieved inmates" because the First Respondent refused to provide Donahue's April 13, 2015 letter to the Sheriff for review under Step Three. Donahue provides no evidence that the LPDC administrative procedure was a dead end; he just conclusorily asserts it. To satisfy the "dead end" exception, Donahue must provide evidence that LPDC's administrators are "unable or consistently unwilling to provide any relief." *Ross*, 136 S. Ct. at 1859. LPDC's Grievance Procedure could have provided Donahue with relief, had he completed all three steps of LPDC's Grievance Procedure. Plus, LPDC's First Respondent and Warden did take action by responding to Donahue's Step One and Step Two complaints. Since there is

no support to substantiate this basis for unavailability of administrative remedies, we reject his claim.

Next, Donahue argues that his administrative remedies were unavailable because LPDC's administrative scheme was "essentially unknowable" such that "no ordinary prisoner can discern or navigate [the administrative procedure]" because neither the Sheriff nor the First Respondent followed LPDC's written policies. But Donahue's argument is misguided. This second type of unavailability relates to whether an "ordinary prisoner can make sense of what [the administrative remedy] demands." *Ross*, 136 S. Ct. at 1859. At Step Two, the Inmate Receipt section of the Warden's decision clearly and unambiguously instructed Donahue to "sign the following Request for Sheriff's Review and send it to the Sheriff" within five days of receipt if he sought additional review, as required under Step Three of LPDC's Grievance Procedure. An ordinary prisoner could make sense of what the grievance procedure required: signing the request and sending it to the sheriff. Moreover, Donahue demonstrated past compliance with LPDC's Grievance Procedure: he signed the First Respondent's response to proceed with Step Two. This, coupled with the fact that Donahue was represented by counsel throughout the grievance process, confirms that Donahue had the capability to successfully navigate LPDC's administrative remedy. We find no evidence in the record to support his claim that LPDC's administrative remedies were unavailable because they were "unknowable."

Finally, Donahue argues that LPDC's administrative remedy was unavailable because LPDC's administrators were "thwart[ing him] from taking advantage of a grievance process through machination, misrepresentation, or intimidation," because the First Respondent added technicalities that were not part of LPDC's written policies. But, as noted above, the alleged technicalities—the request to sign the Warden's response

to indicate receipt of the Warden's decision and the failure to forward Donahue's April 13, 2015 letter to the Sheriff—cannot be said to constitute machination, misrepresentation, or intimidation sufficient to render LPDC's Grievance Procedure unavailable. The request to sign the Warden's response was a legitimate request to prove that Donahue had received the Warden's response. The failure of the First Respondent and the Warden to forward Donahue's April 13, 2015 letter to the Sheriff cannot be said to constitute machination, misrepresentation, or intimidation because there was no request in the letter to forward the letter to the Sheriff. We find no support in the record to establish this claim.

Because LPDC's Grievance Procedures were, in fact, available to Donahue, Donahue failed to properly exhaust his administrative remedies as required by § 1997e(a). Donahue argues that he exhausted the LPDC's Grievance Procedure at Step Three because his April 13, 2015 letter, which he mailed to the First Respondent and the Warden, was timely—within the five-day period required by Step Three of the LPDC's Grievance Procedure—and written to advance his grievance from Step Two to Step Three. But Donahue did not properly follow LPDC's Grievance Procedure: Donahue's letter was not addressed to the Sheriff and did not request the Sheriff to review the decision. Indeed, Donohue admitted in his deposition that he failed to complete Step Three by failing to request reviews of the Warden's decision by the Sheriff. Donahue's refusal to sign the Warden's response and appeal the Warden's decision to the Sheriff constituted an abandonment of the administrative remedies available to him. By doing so, Donahue failed to exhaust his administrative remedies properly. Donahue neither initiated nor completed the third and final step of LPDC's Grievance Procedure. Therefore, the district court properly found that Donahue failed to exhaust his administrative remedies.

IV

Donahue successfully completed Step One of LPDC's Grievance Procedure and began Step Two. But Donahue did not properly complete Step Two, and he never initiated Step Three. Such shortcomings constitute a failure to exhaust available administrative remedies.

Failure to exhaust "usually results in a dismissal without prejudice," but *with* prejudice dismissal is warranted when it is "too late" for the plaintiff to exhaust. *Dawson*, 504 F.3d at 607. Here, Donahue's five-day window to seek the Sheriff's review of the Warden's decision has indisputably come and gone. Accordingly, the summary judgment is AFFIRMED, but we MODIFY that judgment to dismiss the § 1983 claims with prejudice. Donahue's state-law claims were properly dismissed without prejudice. *See* La. Stat. Ann. § 15:1184(A)(2).